CHAS. BURGESS ET AL. v. W. C. HARGROVE.

(Case No. 5404.)

1. ACT OF MARCH 20, 1840 (ART. 1653, REVISED STATUTES), CONSTRUED.— The term " child or children," as used in the above article, refers to descendants in the first degree only, and if a husband or wife dies leaving grandchildren but no children, the entire community estate passes to the surviving spouse.

2. CONTEMPORARY STATUTES.— From the beginning it has been the apparent design of the legislature not to leave the words "child or children" to construction; when descendants were meant, the term "descendants" has been used, the same meaning never being attached to the words "child or children" without a provision in the statute that they should be taken in that sense.

3. INTERPRETATION OF LAWS.— When the words of a new statute differ materially from those of a prior act upon the same subject, they are to have a different and not the same construction.

4. SIGNIFICATION OF WORDS.— The Revised Statutes require that the ordinary construction should be put upon words, except words of art, or those used in connection with a particular trade or subject-matter. The term "child or children," not coming within the exception, must be presumed to be used in its ordinary sense.

5. CIVIL LAW OF INHERITANCE.— Under the civil law the term "children" included all descendants in a direct line.

6. CONSTRUCTION OF STATUTES.— Though our statutes which refer to community rights were derived from the civil law, yet in construing the phraseology

which the legislature used in framing those statutes, the courts will not be confined to a civil law construction, but will resort to rules of interpretation well recognized in every system of laws.

7. SAME.— Prior to the act of March 13, 1848 (Pasch. Dig., arts. 4641, 4642), the statutes regulating descent and distribution used the word "descendants" when descendants without regard to degree were meant; such meaning was never attached to the words "child or children," under any previous statute, except where the statute itself required it in terms.

8. SAME.— Though cases may arise where the legislative intent is that the word "children" should embrace other descendants, and that construction would be given by the courts, yet, when that word is used in such connection as to evince the legislative intent to limit it to its primary and ordinary meaning, the courts will not give it a different signification.

APPEAL from Hopkins.   Tried below before the Hon. E. W. Terhune, Special Judge.

This was a suit brought by appellee for one-half interest in a tract of land, and for partition.   Appellants pleaded not guilty and improvements made in good faith.   The case was submitted to the court at the August term of 1884, and judgment rendered against appellants for one-half the land.

The only assignment of error was that the court below erred in holding that the words " child or children" as used in the Revised Statutes, article 1653, included grandchildren.

The court found the facts to be: that H. C. Cavenor married Mrs. E. Prewit, who at the date of the marriage had one child, Ann Prewit, by a former husband; there was no issue of the marriage of H. C. Cavenor and Mrs. E. Prewit; Ann Prewit married one Collins, and had by him two children, James and Thomas; Ann Collins and her husband died in 1869, and Mrs. E. Cavenor in 1870; H. C. Cavenor then married Permelia King, and died in 1881 leaving no issue; his second wife, Permelia, afterwards married Charles Burgess.   The property in controversy was the common property of H. C. Cavenor and his first wife, Elizabeth Cavenor; all the parties had lived upon it, and at the time suit was brought Charles Burgess and his wife Permelia, defendants in the court below, were occupying and claiming it as a homestead.   Hargrove owned the title of James and Thomas Collins, the heirs of Ann Collins, who was the only child of Mrs. Elizabeth Cavenor and the issue of her first marriage with Prewit.

*W. P. Leuch*, for appellants, on the construction of the statute, cited:  R. S., art. 2165; 19 Tex., 321; 29 Tex., 2; 4 Kent's Comm., sec. 345, notes F. and 1;  Bouv. Dict., word "Child."

*Hunter, Putnam & Crawford*, for appellee.

WILLIE, CHIEF JUSTICE.— This case involves a construction of article 1653 of our Revised Statutes, regulating the descent and distribution of community property. That article is as follows: "Upon the dissolution of the marriage relation by death, all the common property belonging to the community estate of the husband and wife shall go to the survivor, if the deceased have no child or children; but if the deceased have a child or children, his survivor shall be entitled to one-half of said property, and the other half shall pass to the child or children of the deceased."

In this case the deceased wife left no child or children, but two grandchildren survived her, and the question is: Did these grandchildren inherit her share of the community estate or did it pass to her surviving husband?

This question is before us for the first time, and so far as we know, upon the precise facts presented, has never been adjudicated by the courts of any state having a system of laws regulating the community estate of husband and wife similar to our own.

It is a general rule of the common law that the words "child" and "children" do not, in their natural and proper signification, include a grandchild or grandchildren or descendants in a more remote degree. This rule is subject to some exceptions in cases of wills and other conveyances, when it is apparent that it was intended to give the expression a more extended signification. These exceptions are generally and perhaps universally confined to cases where it is necessary to so hold in order to give effect to the words of the instrument or to the evident intention of the party executing it. 2 Jarman on Wills, 135; 2 Redf. on Wills, 15–18; Crook v. Whitley, 7 DeG., M. & G., 490; Willis v. Jenkins, 30 Ga., 167; McGuire v. Westmoreland, 36 Ala., 594; Adams v. Law, 17 How., 417; Winsor v. Odd Fellows Ass'n, 13 R. I., 149.

By the civil law, it seems, under the term children, are included all descendants in a direct.line. 2 Domat's Civ. L., art. 2793.

It is insisted by counsel for the appellee that in construing the above section, we should follow the rule of the civil law, as our community statutes are derived from that system; or, if we adopt the common law rule, that we should give the words "child or children" a liberal and extended meaning, as being more in accordance with the intent of the legislature in enacting the section under consideration.

We think the question before us is to be solved by a resort to principles of construction well recognized in every system of jurisprudence.

The act of January 20, 1840, under which marital rights were

first regulated by statute in this state, provided that upon the disso-
lution of a marriage by death, after payment of all debts contracted
by the husband during the marriage, and debts contracted by the
wife for necessaries during the same time, the remainder of the com-
mon property should go to the survivor if the deceased had no *de-
scendant* or *descendants*.   Hart. Dig., art. 2410.

So far as the persons upon whom the descent was cast upon the
death of one of the spouses is concerned, the act is a substantial re-
enactment of the civil law of Spain and Mexico in force at the time
of its adoption.   Cartwright *v.* Hollis, 5 Tex., 163; Thompson *v.*
Cragg, 24 Tex., 582.

The civil law of Spain and Mexico, previously in force in Texas,
made use of the word " children " as synonymous with "descendants"
in designating the class of persons who were to succeed to the prop-
erty of a deceased ancestor.   Domat, *supra*.   The civil law as ap-
plicable to marital rights was expressly repealed, and the common
law made the rule of decision by the very act alluded to, which es-
tablished a statutory system of marital rights, and regulated the
acquisition, disposition and descent of community property.   It is
therefore easy to understand why this change in expression occurred.
It was for the purpose of designating with absolute certainty the
persons who were to inherit the interest of the deceased spouse, so
that no mistake might occur under any rule of interpretation.

A similar course seems to have been taken in other states, where
the community system derived from the civil law is in force.   In
California the act of April 27, 1850 (since repealed), defining the
rights of husband and wife, was almost identical with our act above
cited, and makes use of the word *descendants* instead of *children*.

By a special provision of the Civil Code of Louisiana the term
"children " is made to include all descendants in a direct line.
Art. 3522, No. 14; Wharton *v.* Silliman, 22 La. Ann., 343.   There
is, therefore, no difficulty in construing statutes in that state which
make use of the word children in regulating the descent of property.

We find that in a few days after the marital rights statute was
enacted an act regulating the descent and distribution of other
estates was adopted.   Whenever in that act it is intended the property
shall pass to the issue or descendant of any heir, it is so stated in
positive terms, whether that heir be a child, a parent, or a collateral
relative.   Whenever, in default of lineal descendants, the property is
to be inherited by relatives in the ascending line or collateral kin-
dred, the statute plainly says, " if there be no children *nor their
descendants*," and leaves no room for construction by using the
words " child or children " alone.

So in the act concerning wills, passed on the same day, as well as in the act of 1837 upon the same subject, care is taken, whenever other lineal descendants besides children are meant, to use the word *descendants*, or declare that within the term children they shall be included. Pasch. Dig., arts. 3868, 5373; Hart. Dig., 3251, 3264.

It is therefore apparent that it was the design of our legislators, from the very beginning, not to leave the words "child or children" to construction, but in all instances to be specific as to what persons should receive by descent or bequest the property of a deceased person.

The marital rights law of January 20, 1840, continued in force till March 13, 1848, when our legislature thought proper to repeal it and enact another in its stead. In so doing they made two important changes in the language of the law governing the community estate of the husband and wife. The new act provided that all property, both real and personal, owned by either of the spouses before the marriage, as well as that acquired afterwards by gift, devise or descent, as well as the increase of the lands and slaves thus acquired, should be the separate property of such spouse.

The old law had confined the separate property to the lands and slaves owned before marriage or acquired by gift, devise or descent during its continuance, and the wife's paraphernalia.

The new statute provided that, upon the dissolution of the marriage by death, after payment of debts (as provided in the former statutes), the remainder should go to the survivor, if the deceased had no child or children; but if the deceased had a child or children, the survivor should have one-half of said property, and the other should pass to the child or children of the deceased. Pasch. Dig., arts. 4641, 4642.

One important change brought about by these differences in language is a decrease in the amount of community estate. Was there no change wrought by dropping the word "*descendants*" and inserting in lieu of it the words "*child or children?*"

We have seen that, in preceding statutes, the word *descendants* was always used when descendants were meant, and that this same meaning was never attached to the words *child or children* without a provision in the statute itself declaring that they should be taken in that sense. There was no such provision in the new act of 1848. There was nothing in the act itself, or in contemporary legislation upon this or any kindred subject, which evidenced a design to give to these words a more extended meaning than had been given them in statutes formerly adopted.

Indeed, the evidence of contemporary legislation is directly to the

contrary. For, at the same session, the legislature repealed the act of January 28, 1840, regulating descents and distributions, and enacted a new law upon the subject, throughout which the same word "descendants," or "issue," is uniformly employed when property is to be inherited not only by children but by those descended from them. If the legislature intended that the term "child or children" should include issue of a more remote degree, why did they retain the additional words "descendants" or "issue" in the new act regulating the descent and distribution of intestates' estates? Why did they use different terms in the two acts to express the same thing, and, in order to use different terms, change the language of a former statute upon the same subject? It is no answer to say that they employed the words "child or children" in their civil law sense in reference to community estate, and in their common law sense in reference to all other property. Our legislators would certainly not trust to these words receiving a civil law construction in a statute passed more than eight years after the common law had been made the rule of decision, when they were not willing to risk their being so interpreted in a statute freshly gathered from Spanish jurisprudence. Nothing can be more certain than that such an intention would have been clearly expressed in terms not to be misunderstood.

But we need not resort to the language of contemporary statutes to arrive at the intention of the legislature in passing the act under consideration. It is a familiar principle in the interpretation of written laws, that when the words of a new statute differ materially from those used in a prior act upon the same subject, they are to have a *different* and not the *same* construction. Rich *v.* Keyser, 54 Pa. St., 86.

The legislature has the right to alter existing statutes, and it must be presumed that they exercised this right when they deliberately expunged from a law terms of comprehensive signification and inserted others of a more restricted meaning. It was equivalent to enacting that hereafter all the descendants of a deceased spouse shall not inherit his share of the community property as heretofore, but his children only shall succeed to his share of that particular estate.

The difference between the terms used was far from being an immaterial one. In the ordinary acceptation the words "child or children" referred to descendants in the first degree alone.

If ever made to embrace issue further removed from the ancestor, it was by reason of express enactment to that effect or circum-

stances clearly authorizing such a construction. The legislature must be presumed to have been familiar with the meaning of those words and the rules governing their interpretation. Yet they neither declared that the words should have a meaning synonymous with *descendants*, or placed anything upon record showing such to have been their intention.

It would be an injustice to the legislature to suppose that they deliberately struck from an important law words which had a defined and well known signification, and inserted others of doubtful meaning, or which were synonymous with the former words in certain cases only, and these cases not well established. We cannot believe that they intentionally left such vast property rights in a state of uncertainty, and in order to do so changed the language of an existing law in which they were clearly defined and limited.

We must conclude that they were actuated by reasonable motives; that they intended to use the words "child or children" in their ordinary sense, and to make the descendants in the first degree of the deceased spouse the only heirs to his share of the community estate. They had restricted the amount of that estate. They likewise restricted the number of persons who could deprive the surviving spouse of a right to succeed to the whole of it.

It is clear, too, that the Revised Statutes intended to continue the same rule of descent. The whole subject of the descent and distribution of intestates' estates, both separate and community, is provided for in one title of the Revised Statutes. Article 1653, providing for the descent of community property, is in about the exact language of section 3 of the act of March 13, 1848, so far as the latter section regulates the descent of the common estate. The words "child or children" are used, and not "descendants" or "issue." All articles of the same title which regulate the descent of separate property make use of the words "issue" or "descendants," or "children and their issue" or "descendants." This is a plain indication of legislative intent that the property of a decedent shall not pass to the descendants of a deceased child unless so expressly provided. It is a sure indication that community estate goes to the children alone, and separate property to them or their descendants. If we examine the articles found under title XCIX, which treats of wills, we find an express provision that, under the name "children," *as used in that title,* descendants in any degree are to be included. This shows that the legislature deemed it necessary to make such a provision, or their intention would be construed to be otherwise. It shows further that, not having made such a provision in the arti-

cle regulating descents, they intended that the word children should not be construed as in those regulating the disposition of property by will.

The Revised Statutes require that "the ordinary signification shall be applied to words, except words of art or words connected with a particular trade or subject-matter, when they shall have the signification attached to them by experts in such art or trade, or with reference to such subject-matter." The words "child or children" are not technical terms to require the evidence of an expert to define them; and the subject-matter in reference to which they are used does not demand that they shall receive other than their ordinary signification. That hardship may result from such construction is not for the courts, but for the legislature, to take into consideration.

There may be cases found where the word "children" occurring in statutes has been construed to include grandchildren. This is generally when the bounty of the government has been dispensed to soldiers or settlers upon the public land, or the like meritorious persons. The courts have been disposed to hold in favor of such persons and their offspring that the bounty shall extend to grandchildren or issue in a more remote degree than children, though the strict language of the statute would include the latter only. Walton v. Cotton, 19 How., 355; Cutting v. Cutting, 6 Fed. Rep., 259.

Such construction is held to be in consonance with the spirit and purpose of these benevolent laws, and we do not combat the correctness of the decisions. There might be cases where we would hold that the term "children" used in a statute would embrace other descendants, basing our judgment upon the clear intent of the legislature that it should be so construed. But when every rule by which the intent of the legislature can be ascertained is consistent with but one construction, and that construction is in perfect accord with the simple, primary and ordinary meaning of the words of a statute, we know of no principle upon which we can give them a different signification. We are, therefore, of opinion that upon the death of one of the spouses the interest of the deceased in the community estate vests in his or her descendants in the first degree; and that in default of such a descendant it vests in the surviving spouse.

Under this construction the half interest of Mrs. Elizabeth Cavenor in the tract of land described in the petition upon her death vested in her husband, Hugh C. Cavenor, and not in her grandsons, James and Thomas Collins. As the appellants claim through Hugh C. Cavenor, and the appellee through James and Thomas Collins, the

judgment below in favor of the appellee was erroneous. It is therefore reversed, and the court here proceeding to render such judgment as should have been rendered below, orders, adjudges and decrees that the appellee, W. C. Hargrove, take nothing by his suit, and the appellants go hence without day and recover of the appellee their costs in this court and the court below.

REVERSED AND RENDERED.

[Opinion delivered May 5, 1885.]