## W. D. WILKINS, ADMR., v. ARCHIE BRIGGS ET AL.

### Decided January 23, 1908.

**1.—Homestead—Death of Husband and Wife—Administration.**

The provisions of section 50, article 16 of the Constitution of this State, and of our statutes, exempting the homestead and certain named articles from liability for debts, were intended for the benefit of the constituents of the family during the lifetime only of the head of the family. No estate or right in the homestead or exempt property can be asserted by any constituent of the family independently of the head of the family. Upon the death of both the husband and wife the heirs or devisees take the homestead and other exempt property subject to the superior claims of creditors, except in so far as such property may be withdrawn from administration by section 52, article 16 of the Constitution, and chapters 17 and 18 of the Revised Statutes.

**2.—Exemption, Who Entitled to.**

Under the provisions of article 1869, Rev. Stats., all the estate of a decedent "except such as may be exempted by law from the payment of debts" descends to and vests in his heirs, devisees or legatees, subject to the claims of creditors; and under the provisions of section 52 of article 16, of the Constitution, and articles 2037, 2044, 2046 and 2049' of the Revised Statutes, it is only that portion of the estate which the court is required to set aside for the widow and minor children and unmarried daughters remaining with the family of the deceased, that is exempt from the payment of debts within the meaning of article 1869.

**3.—Exemptions—Administration—Creditors.**

While the Constitution exempts the homestead, and other property mentioned, to the family during its existence, it has left to the Legislature the right to continue such exemptions as it saw fit, after the death of the head of the family. In doing this, the Legislature has confined the exemptions to certain named persons, to wit: the widow, minor children, and unmarried daughters remaining with the family.

**4.—Same—Minor Children—Definition.**

By the term "minor children," as used in section 52, article 16 of the Constitution, and in article 2046, Revised Statutes, is meant the immediate descendants of the deceased. Minor grandchildren are not included. The term "children" is said to include grandchildren only when it is used in the sense of "issue" or "descendants."

**5.—Exemption—Grandchild—Administration.**

The existence of a minor grandchild as a constituent member of the family at the time of the death of the head of the family, would not prevent the subjection of the homestead of the decedent to administration and sale for the payment of debts of the decedent.

**6.—Estate—Divorced Daughter—Homestead.**

A married daughter separated from her husband and living with the family at the time of the death of the head of the family, would not be within the class of persons named in the statute as "unmarried daughters remaining with the family," and would not, therefore, be entitled to the homestead exemption.

Appeal from the District Court of Fannin County. Tried below before Hon. Ben. H. Denton.

*McGrady & McMahon,* for appellant.

*O. P. Hale, Sturgeon & Moore, C. A. Wheeler* and *H. A. Cunningham,* for appellees.

HODGES, ASSOCIATE JUSTICE.—The nature and result of this suit is concisely stated in the brief of the appellant, from which we quote substantially as follows: The appellant, as a creditor and administrator of the estate of Spencer Briggs, sued Archie Briggs, the sole heir of John Briggs, deceased, and the other appellees, as heirs of Spencer Briggs, deceased, and of Lucinda Briggs, the deceased wife of Spencer Briggs, in the District Court of Fannin County, to recover 200 acres of land and to cancel a deed signed and acknowledged by Spencer and Lucinda Briggs in 1890, duly recorded, and purporting to convey to John Briggs, in consideration of his four promissory notes aggregating the sum of $1,980, the land in controversy. It was alleged that the deed was never delivered, nor was it intended by the parties thereto to pass title, but was signed and recorded for the purpose of keeping the creditors of Spencer Briggs from taking the land and the annual crops and rents by legal process for their debts. The land was then the homestead, and in the actual possession, of Spencer Briggs and wife, and was their community property. It continued to be their homestead until the death of both. Lucinda Briggs died in 1900. Spencer Briggs died in December, 1904. John Briggs, to whom the deed was made in 1890, died in 1896 without having paid anything on the notes. It was alleged that if the deed was ever delivered, Spencer Briggs rescinded the sale for failure to pay the notes, and also re-acquired title to the land by adverse possession of ten years. Appellant is a creditor of Spencer Briggs' estate, with a duly probated claim amounting to over one thousand dollars based upon a debt which was contracted in 1888. Spencer Briggs died insolvent, leaving neither wife nor minor children nor unmarried daughter.

The trial was before the court without a jury. Judgment was rendered for the appellees, from which the appellant prosecutes this appeal individually and as the administrator of the estate of Spencer Briggs, deceased. After judgment the court filed findings of fact and conclusions of law, from which we make and adopt the following findings of fact:

*Findings of Fact.*—Spencer Briggs and Lucinda Briggs, ancestors of the appellees herein, were husband and wife, having intermarried many years before the land in controversy was acquired. They purchased the land involved in this suit, about the year 1885; and by virtue of that purchase it became their community property and was used and occupied by them as their homestead up to the date that each of them died. Lucinda Briggs died November 8, 1900,

intestate, leaving as her only children and heirs, Thomas Johnson, Alex Briggs, Lewis Briggs, Adolphus .Briggs, H. D. Briggs, Kate Tanner, Rachel Fields, Frances Railback, Closy Thomas and Julia James, and her grandchild, Archie Briggs, a son of her deceased son, John Briggs. After the death of his wife Spencer Briggs continued to reside upon the land and to make the same his homestead until the date of his death, which occurred in December, 1904. He died intestate, leaving as his only heirs his grandchild, Archie Briggs, and his children, who are the same as those above mentioned, except Thomas Johnson; the latter, we presume, was the child of his wife by a former marriage. John Briggs, a son of Spencer and Lucinda Briggs, died in the year 1895, leaving as his only heir and child the appellee, Archie Briggs, who is now a minor fourteen years of age. All of the children of Spencer Briggs at the time of his death were over the age of 21 years, and all of his daughters were married women at the time of the death of both Spencer Briggs and his wife, and have continued to be married women with living husbands since that time. Spencer Briggs was married but once.

In August, 1890, Spencer Briggs and his wife, Lucinda Briggs, signed and acknowledged before a notary public, in the usual statutory form, a general warranty deed purporting to convey to John Briggs the land involved in this suit and described in the appellant's petition. The conveyance recited a consideration of certain promissory notes aggregating the sum of $1,980 to be paid thereafter by John Briggs to Lucinda Briggs, and reserving a vendor's lien upon the land. Spencer Briggs caused the deed to be recorded in the deed records of Fannin County, but the deed never was in fact delivered to John Briggs nor accepted by him. It was the intention and understanding of all the parties in the deed that no title should pass by it, and that Spencer and Lucinda Briggs should continue to own the land in the same manner as if no such deed was ever made. They retained possession of the land, John Briggs never having taken possession nor made any claim to the land, nor paid anything on the notes recited in the deed. The sole purpose of making and recording the deed was to prevent the creditors of Spencer Briggs from levying upon the crops raised on the land, Spencer Briggs being at that time indebted to various persons and insolvent.

Appellant is the duly appointed, qualified and acting administrator of the estate of Spencer Briggs, deceased, having been appointed by the County Court of Fannin County on the —— day of April, 1905, and qualified as such in the same month.

At the time Spencer Briggs died he owned an undivided one-half of the land in controversy, and the heirs of his deceased wife owned the other half; but Spencer Briggs was occupying all of it as his homestead. At the time of his death he was insolvent. Archie Briggs was then living with him on his homestead, and as such was a constituent member of Spencer Briggs' family, being supported, cared for and protected by his grandfather. Archie Briggs had resided with his grandfather since before the death of his

father, his mother having died before his father did, but was never adopted by either of his grandparents according to law. There was never any administration upon the estate of John Briggs, nor upon the estate of Lucinda Briggs, nor does her estate owe any debts. John Briggs at the time of his death owned a farm consisting of about 75 acres, adjoining the land in controversy; this was inherited by his son, Archie, upon his father's death, and is still owned by him exclusively. All of the children of Spencer and Lucinda Briggs were, at and before the death of himself and his wife, grown and married, as alleged in appellant's petition. Some time before the death of Spencer Briggs his daughter, Kate Tanner, separated from her husband because of alleged cruel treatment, and went to live with her father and mother. From that time till the death of her father she remained with them and did the household work, but to a large extent supported herself. With money of which she became possessed either before or after her separation from her husband, she purchased and paid for a tract of land adjoining that owned by her father. She was living in the house with her father and Archie Briggs at the time of her father's death, but had never been divorced from her husband.

In the year 1888 Spencer Briggs became indebted to the appellant, which debt was afterwards reduced to a judgment in the County Court of Fannin County, in 1893, amounting at that time to the sum of $668.81 and costs of suit. Execution was issued thereon in such a manner as to prevent the judgment from becoming dormant. This judgment was never paid by Spencer Briggs during his lifetime; and after his death letters of administration were granted to the appellant as a creditor of his estate. The claim based upon that judgment was made out, verified and filed as a claim against the estate of Spencer Briggs, and entered upon the claim docket of the Probate Court of Fannin County on May 5, 1905. At that time the claim amounted to about $1,137. It was allowed for that amount by the county judge, and classed as a fourth-class claim on July 26, 1907.

*Conclusions of Law.*—From the conclusions of law filed by the trial court, it is evident that he based his judgment in favor of the appellees upon the fact that Archie Briggs, a grandson of Spencer Briggs, residing with the latter at the time of his death as a constituent member of his family upon the land in controversy, preserved the homestead exemption of Spencer Briggs' half interest in the land after the latter's death; and that this half descended to the heirs of Spencer Briggs free from the claims of creditors, and was not subject to administration. The correctness of this conclusion depends upon the proper construction to be given the constitutional and statutory provisions relating to the estates of decedents, and creating exemptions in favor of heirs and devisees under certain conditions.

Section 50 of article 16 of the Constitution reads as follows:

"Section 50. The homestead of a family shall be and is hereby protected from forced sale for the payment of all debts, except for

the purchase money thereof, or a part of such purchase money, the taxes due thereon or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead; nor shall the owner, if a married man, sell the homestead without the consent of the wife, given in such manner as may be prescribed by law. No mortgage, trust deed or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the husband alone or together with his wife; and all pretended sales of the homestead involving any condition of defeasance shall be void." The provisions of section 50, and those of the statute, exempting the homestead and certain named articles from liability for debts, were intended for the benefit of the constituents of the family only during the lifetime of the head of the family. While it is true the exemptions are given to the family, and not to the head of the family, yet this language was not intended to vest an estate or right in the homestead or exempt property which might be asserted by any constituent of the family independent of the head, or of the husband or wife. (Martin v. McAllister, 94 Texas, 567; Ashe v. Yungst, 65 Texas, 636; Shannon v. Gray, 59 Texas, 252; Johnson v. Taylor, 43 Texas, 121.) Upon the death of the husband the wife succeeds to the position occupied by him as the head of the family, and as such continues the exemption given for the benefit of all the members. But upon the death of both husband and wife the heirs or devisees take the homestead and other exempt property subject to the superior claims of creditors, except insofar as such property may be withdrawn from administration by section 52 of article 16 of the Constitution, and chapters 17 and 18 of the Revised Statutes. They do not inherit the exemptions of their ancestors, but take them by virtue of those other provisions of law. (Rev. Stat., art. 1869; Root v. Robertson, 93 Texas, 365; Givens v. Hudson, 64 Texas, 473.)

Article 1869, Rev. Civ. Stat., provides that when a person dies testate or intestate all of his estate "except such as may be exempted by law from the payment of debts" descends and vests in his devisees, legatees or heirs, subject in their hands to the payment of the debts of the testator or intestate. The exemption there referred to is that provided for in sec. 52 of art. 16 of the Constitution and chapters 17 and 18 of the statutes. Without these latter provisions the exempt property of the ancestor or testator would still be subject in the hands of the heirs or devisees to the payment of debts due from the estate. Hence, we must look to those provisions to ascertain the persons to whom this exemption is awarded, and the conditions under which it may be asserted.

Section 52 of article 16 of the Constitution is as follows: "Sec. 52. On the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent

and distribution, but it shall not be partitioned. among the · heirs of the deceased during the lifetime of the surviving husband or wife, or so long as the surviver may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having the jurisdiction, to use and occupy the same."

Article 2037 of the Revised Civil Statutes makes it the duty of the County Court to fix the amount of an allowance for the support of the widow and minor children of the deceased.

Article 2044 provides that this allowance for the support of the widow and minor children of the deceased shall be paid in preference to all of the other debts except the funeral expenses and expenses of the last sickness of the deceased.

Article 2046 provides that the court, after inventory and appraisement have been returned, shall set aside for the use and benefit of the widow and minor children and unmarried daughters remaining with the family of the deceased, all such property of the estate as may be exempt from execution or forced sale by the Constitution and laws of the State, except an exemption of one year's supply of provisions.

Article 2049 makes provision for the persons to whom the property set aside for the benefit of the widow, minor children and unmarried daughters, shall be paid or delivered. The first subdivision directs that if there be a widow and no children, or if the children be the children of the widow, the whole property shall be paid to the widow; if there be children and no widow such property shall be delivered to the children if they be of lawful age, or to the guardian if they be minors. Subdivision three provides that if there be children of the deceased of whom the widow is not the mother, ˙the share of such children in such exempt property, excepting the homestead, shall be delivered to such children if they be of lawful age, or to the guardian if they be minors. Subdivision four provides that in all cases the homestead shall be delivered to the widow if there be one; and if there be none, to the guardian of the minor children and unmarried daughters remaining with the family.

It is made clear from the foregoing provisions, that it is only that portion of the estate which the court is required to set aside · for the widow and minor children and unmarried daughters remaining with the family of the deceased, which is to be considered as exempt within the provisions of art. 1869. By this proceeding it is withdrawn from administration and becomes exempt for that purpose only. However, it has been decided that while each of these constituent elements of the family named in the statute can take only his or her distributive share, yet the mere existence of one of them to claim the exempt property operates, in case the estate is insolvent, for the benefit of all the heirs, and vests title in each of them free from the claims of creditors. While the Constitution exempts the homestead, and other property mentioned, to the family, it has left to the Legislature the right to continue such exemptions as it saw fit after the death of the head of the family. (Zimmermann v. Von Rosenberg, 76 Texas, 525.) In doing this the Legis-

lature has used different language, and makes the exemption only in favor of certain named persons, which are: the widow, minor children and unmarried daughters of the deceased remaining with the family. The word "family" as used in the Constitution and statute exempting the homestead and certain other property in the lifetime of the husband or head, has a broader signification and includes a greater variety of persons than the words "widow and minor children and unmarried daughters remaining with the family." Had the Legislature intended to be equally as comprehensive in its exemption after the death of the head of the family, then it would have used words sufficiently comprehensive to convey that meaning; but it has not done so. As said by our Supreme Court, in Root v. Robertson, *supra,* "There is no provision of the law that authorizes a court to set apart exempt property of an estate to the surviving constituents of every family to which it may have been exempt. The constituents of a family who are entitled to a homestead and other exempt property upon the death of the head, are named in the law and the Constitution."

We think the case of Root v. Robertson, from which the foregoing extract is taken, is decisive of this case. While the facts in that case are different from those here involved, yet the principle of law announced is applicable to the facts in this. In that case the family consisted of the widowed mother and son, who lived together for many years. The son was unmarried and had no other constituent of his family except his mother, and, for a time, his sister, who afterwards married. They lived together upon a lot used as a homestead, belonging to the son. The latter supported the mother and sister during the time they were with him, the mother being entirely dependent upon her son for support. She kept house for him and performed other domestic services usually required under similar conditions, up to his death. Before his death J. A. B. Putnam, the son, undertook to provide by will for the disposition of his homestead and other property, some of it going to his mother during her life, and after her death to his sister. After his death the property was sought to be subjected to the payment of his debts, he being insolvent when he died. In holding that the property was subject to be administered and appropriated to the payment of his debts, and that it could not be held by the beneficiaries under his will free from the claims of creditors, the court said: "If we concede, for the sake of argument, that J. A. B. Putnam and his mother while living together constituted a family within the meaning of art. 16, sec. 50, of the Constitution, so that the exemption expressed in that section would apply to the head of the family in his life, still the mother could not hold the homestead after the death of her son, because she can not inherit the exemption which was accorded to him and does not come within the terms of sec. 52 of art. 16 of the Constitution, nor within the provisions of art. 2046 of the Revised Statutes." After reviewing the constitutional provisions relating to the exemption of the homestead from forced sale, and the significance attached to the words "forced sale," the court resumed: "The exemption expressed in sec. 50 applies

to property where the head of the family is living, but furnishes no rule for its disposition after his death. (Givens v. Hudson, 64 Texas, 473; Zwerneman v. Von Rosenberg, 76 Texas, 525.) In the last named case Judge Gaines, speaking for the court, said, 'In the provisions of the Constitution of the State the disposition of the homestead after the death of the owner was left wholly to the wisdom of the Legislature. It is so also in the present Constitution, except as to the manner of its descent and the use reserved to the surviving spouse and the minor children.' It has been frequently and uniformly held in this State that the homestead exemption does not descend to heirs, but they take the property under the statute and the Constitution exempted from the debts of the ancestor, not because it was exempted in his hands, but because they come within the class of persons named in the Constitution and the law. In the case of Givens v. Hudson, cited above, Judge Stayton said: 'The thing is not exempted to the child or widow because it was exempted to the father or husband who was the head of the family, but because the child or widow was, and remains, the constituent of the family.' " The court then quotes sec. 52 of art. 16 of the Constitution and construes its effect upon those provisions of art. 2055 of the Rev. Civ. Stat., where it is sought to vest absolutely, in case of insolvency, the title of the widow and children to all the property and allowances set apart to them under the provisions of the statute. That portion which is intended to deprive other heirs of their interest in such property is held to be repugnant to sec. 52 of art. 16 of the Constitution, and to be ineffective for that reason. And then the court continues: "Considering sec. 52, art. 16, of the Constitution, as interpreted by this court in Givens v. Hudson and Zwerneman v. Von Rosenberg, in connection with arts. 2046 and 2055 of the Rev. Stat., the law may be concisely stated thus: Upon the death of one who was the head of the family, leaving a widow and minor children, or either, it is made the duty of the County Court to set aside the homestead and other exempted property to such widow and minor children who would be entitled to the use of the homestead under the limitations of sec. 52, art. 16, of the Constitution; but the title to the property would vest in all of the heirs, not, however, subject to the debts of the deceased, because, being set apart by the court, it is withdrawn from the administration of his estate, and would not afterwards become subject to the payment of debts if not used as a homestead, because the exemption, by law, attaches after death in favor of the persons named. There are no provisions in the law that authorize a court to set apart exempt property of an estate to the surviving constituents of every family to which it may have been exempted. The constituents of a family who are entitled to the homestead and other exempt property upon the death of the head, are named in the law and the Constitution. The mother of the deceased is not named, and Mrs. Putnam had no homestead right in the property."

The legal effect of the foregoing decision is to establish the rule that the claims of creditors upon the homestead of the deceased ancestor are superior to those of the heirs or other distributees,

except where there remain some of the persons to whom the homestead may be set aside under the Constitution and laws governing such matters; and that those are restricted to the persons named in sec. 52 of art. 16 of the Constitution and art. 2046 of the Rev. Stat., the widow and minor children and unmarried daughters remaining with the family of the deceased. There are expressions used in prior decisions rendered by the Supreme Court, in which the words "constituents of the family" are used in connection with those provisions of the Constitution and the statutes in such a manner as to justify the inference that it was at least doubtful whether so restricted a construction should be adopted. Acting upon the belief that a more liberal construction should be applied to the language used, the Court of Civil Appeals of the Fifth District, in Clark v. Goins, 23 S. W., 703, held that a grandchild, by reason of being a "constituent of the family," was entitled to preserve the homestead exemption. However, we think this case may now be regarded as having been overruled by Roots v. Robertson, *supra.*

It follows, therefore, that unless minor grandchildren are included in the term "minor children," as used in the statute, the appellee, Archie Briggs, is not one of those named in the Constitution to whom the homestead may be set aside upon the death of the head of the family. The term "children" is said to include grandchildren only when it is used in the sense of "issue" or "descendants." (5 Am. & Eng. Ency. of Law, 1085, 1086; 7 Cyc., 126, and cases cited.) No such significance is intended here; but we think from the connection in which the term is used it means the immediate descendants of the deceased. In subdivision three of art. 2049, to which reference has already been made, where it is sought to designate the parties to whom the exempt property shall be delivered after being set apart by the court, this significant language is used: "If there be children of the deceased of whom the widow is not the mother." Other portions provided for cases where there may be a widow and no children, or if the children be the children of the widow, or if there be children and no widow. But no provision is made for children except those of the widow and of the deceased, clearly implying that no other group of descendants are to be considered as coming within those who could claim the rights therein given. Prior to 1887, in the provisions with reference to the descent of community property where the husband or wife survived and there were no children, the language of art. 1689 was construed to mean children of the deceased, his immediate lineal descendants. (Burgess v. Hargrove, 64 Texas, 110; Cartwright v. Moore, 66 Texas, 55.) In order to obviate the results of that construction and prevent the surviver from taking, to the exclusion of grandchildren where their parents were dead at the time, this article was amended so as to read, "children or their descendants." The construction which had been placed upon this statute prior to its amendment was strictly adhered to in every instance where its provisions were involved, till after the amendment. There is no reason why the term "children" should be differently construed in this instance.

To construe the term "children" as used here to include grand-

children might, in some instances, permit the beneficiary of such a construction to have two homesteads set aside to him in the same right and at the same time. This, we think, is clearly contrary to the intention of the Legislature. For instance, had Archie Briggs' father, John Briggs, survived Spencer Briggs and then died, the fact that Archie, by reason of having been a constituent of the family of Spencer Briggs and as such entitled to the exempt homestead upon Spencer's death, would not defeat Archie's right to participate in the same manner, upon the death of his own father, in the homestead left by the latter. The facts in this case show that John Briggs at his death left a tract of land consisting of some 75 acres adjacent to the land in controversy. Archie, as the minor child of John Briggs, was entitled, upon the death of his father, to the homestead rights in this 75 acres of land. This he could claim by virtue of being a minor child of John Briggs. Did the Legislature, then, intend that he should be entitled to another exemption in another estate by reason of being a grandchild and constituent of the family; or in other words, that he should be regarded as a child of both his father and grandfather? We think not. Again, sec. 52 of art. 16 of the Constitution uses the language, "or so long as the guardian of *the minor children of the deceased* may be permitted, under the order of the proper court," etc. The children here referred to are the same intended to be provided for in the statute. We think the language of the Constitution is just as explicit as it well could be.

It is our opinion that the land in controversy was a part of the assets of the estate of Spencer Briggs, to the possession of which the administrator was entitled; that it was subject to the payment of the debts of Spencer Briggs; and that the court erred in rendering judgment against the prayer of the administrator to have the deed canceled and for the possession of the property for the purpose of being administered upon in the usual course of such proceedings. The judgment of the court will therefore be reversed and such judgment here rendered as should have been rendered in the court below, granting the relief prayed for by the appellant.

We think the court correctly concluded, as a matter of law, that Kate Tanner was not within the class of persons named in the statute as one of the "unmarried daughters remaining with the family," and for that reason did not interfere with the descent of the property subject to the payment of whatever debts there might be against the estate of her father. The judgment of the court is therefore reversed and rendered.

*Reversed and rendered.*