## BARTLETT v. TERRELL et al. (No. 7665.)*

(Court of Civil Appeals of Texas. San Antonio. Jan. 26, 1927. Rehearing Denied. March 2, 1927.)

1. Wills ⬨⟶440—Chief end in construing will is to ascertain testator's intention as expressed in will.

In construing will, the chief end is to ascertain the intention of the testator as expressed in the words of the will, and all rules of construction should bend to this.

2. Wills ⬨⟶497(2)—Under the common law, word "children" as used in will does not include grandchild (Rev. St. 1925, art. 1).

Under the common law which prevails in view of Rev. St. 1895, art. 3258, Vernon's Sayles' Ann. Civ. St. 1914, art. 5492, now Rev. St. 1925, art. 1, the term "children" as used in a will does not include grandchild, but only descendants of the first degree.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Child—Children (In Wills).]

3. Wills ⬨⟶497(1)—Statute must clearly state that word "children," when used in will, shall mean descendants.

Statute must clearly state that word "children," when used in will, shall always mean descendants in order to effect such result, since under the common law the word children is not synonymous with descendants.

4. Wills ⬨⟶437—Law of descent and distribution does not apply to wills.

The law of descent and distribution does not apply to wills, for the law on descent and distribution was passed on the same day as the law on wills; latter not containing provisions of former.

5. Wills ⬨⟶497(2)—Words "our children," as used in devise to wife to be divided between our "children," held not to include grandson (Rev. St. 1925, art. 10; Rev. St. 1879, arts. 4867–4869); "child."

Words "our children," as used by testator in devise of property to wife to be disposed of by her as she should deem fair between "our children," held not to include son of deceased daughter; ordinary meaning of the word "child" being a son or daughter, a male or female descendant in the first degree, the immediate progeny of human parents, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 5502 (Rev. St. 1925, art. 10) and Act Jan. 28, 1840, § 14 (2 Gammel's Laws, p. 344), as carried into Rev. St. 1879, art. 4870, providing that "children" shall include descendants of any degree, being applicable only to Rev. St. 1879, arts. 4867–4869, and not to wills generally.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Our children.]

6. Wills ⬨⟶486—Grandson claiming to be included in devise to testator's wife to be divided between "our children" had burden of proof.

Grandson had burden of showing that testator intended to include him in words "our children" in devise to wife to be divided between "our children."

7. Wills ⬨⟶486—Construction of will held unaffected by construction of unknown party in another state.

That unknown party in another state construed will as including grandson in word "children" held without bearing on construction of will.

8. Wills ⬨⟶486—Construction of will held unaffected by demand of one purchasing from testator's estate for quitclaim deed from grandson.

That unknown person in another state, who had purchased land from testator's estate, demanded quitclaim deed from grandson, held without bearing on construction of the will claimed to include grandson by use of word "children."

9. Estoppel ⬨⟶63—That purchaser from testator's estate received from defendants security against grandson's claim under will held not to estop defendants to deny claim.

That person in another state who had purchased land from testator's estate demanded

---

security against claim of testator's grandson, which was complied with by defendants, *held* not to show estoppel of defendants in favor of grandson's claim under will.

**10. Wills ⬤⟿475—Will must be construed by its own language and not in light of agreement between testator and wife.**

Unambiguous will devising property to wife to be divided between "our children" must be construed by its own language, and not in light of agreement between testator and wife that she would give her one-half of her part of the community to grandson.

**11. Wills ⬤⟿59—Agreement of testator's wife to provide for grandson out of her estate held without consideration.**

Where testator intended to give whole of his estate to his sons, and that his grandson might receive something from testator's wife, her agreement to provide for grandson out of her estate was unenforceable as being without consideration.

**12. Evidence ⬤⟿84—Probated will and instruments involved in partition of estate thereunder are presumed recorded.**

Court presumes that probated will and instruments involved in partition of estate thereunder were recorded.

**13. Wills ⬤⟿420—Claimant to share of estate was charged with knowledge of recorded will and recorded instruments in partition thereunder.**

Grandson claiming share of grandparents' estate was charged with knowledge of provisions of grandfather's recorded will and of recorded instruments involved in partition of estate thereunder.

**14. Pleading ⬤⟿216(1)—On general demurrer only question is whether pleading discloses cause of action.**

Where a general demurrer is interposed to a pleading, the only question before the court is whether the pleading discloses a cause of action.

**15. Pleading ⬤⟿214(4)—General demurrer admits facts well pleaded, but not conclusions.**

While general demurrer to pleading admits the truth of every fact well pleaded, it does not admit conclusions, surmises, or unfounded assertions, aspersions of character, or charges of fraud.

**16. Frauds, statute of ⬤⟿75—Alleged verbal contract to devise lands to grandson held within statute, despite mention of claim in will.**

Alleged verbal contract to devise lands to grandson *held* within statute of frauds where grandson had not performed any consideration, or assumed possession or placed any improvement upon property despite mention of claim on estate in will.

**17. Equity ⬤⟿64—Where complainant's allegations show that he had usual means to discover fraud, complainant will be held as matter of law to have had notice thereof.**

If complainant's allegations show that he had at hand means to readily discover fraud and

such means would have been used by a person of ordinary prudence in transaction of own business, complainant will be held as a matter of law to have had notice of everything which proper use of means would have disclosed.

**18. Equity ⬤⟿64—Grandson who took no action for 17 years held not entitled to have release of grandparents' estate set aside as fraudulent.**

Where grandson was charged with notice of facts regarding grandparents' estate and execution of release thereof by him secured by his uncles, and notwithstanding took no action for 17 years, the property being used by others and the surviving grandparent dying in such time, *held*, that he was not entitled to relief on ground of fraud in securing the release.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Suit by Charles Terrell Bartlett against Frederick Terrell and others. From a judgment of dismissal, plaintiff appeals. Affirmed.

J. B. Dibrell, of Seguin, and J. D. Dodson, of San Antonio, for appellant.

Wm. Aubrey and Ball & Seeligson, both of San Antonio, for appellees.

FLY, C. J. This is a suit instituted by appellant against Frederick Terrell, Henry Terrell, Sarah Terrell, a feme sole, and M. A. Terrell, sole heir and surviving widow of William Terrell, deceased, to obtain the cancellation of a certain receipt or release executed by him to appellees, that a certain agreement made by appellant's grandmother, Mrs. Sarah I. Terrell, with appellees be enforced as a trust or a contract, which agreement set apart one-half of the grandmother's estate to appellant, and in case that could not be done then that his interest in his grandfather's estate be established, that a complete accounting be directed and the estate partitioned, the real property owned by the said Sarah Terrell, appellee herein, be restored to the estate and accounted for in the partition of the estate. Further, that the real estate which may be allotted to the appellees be charged with liens to secure appellant in the payment of the money judgment which may be shown to be due him. The third amended petition is quite voluminous, covering 45 typewritten pages of the transcript. Appellees filed a general demurrer and special exceptions to appellant's petition. The general demurrer was sustained by the court, and appellant declining to amend, the cause was dismissed.

The court will endeavor to select the salient points and the material matter from the pleading, and compress them into a compass that can be carried into an opinion, and at the same time make them intelligible and render clear the different rulings of the court on each vital part thereof. We will, in view of the

action of the court in sustaining a general demurrer, state the allegations as though they were facts. Appellant claims under a will of his grandfather Charles M. Terrell, who died in the latter part of 1904, leaving a holographic will. The maker of the will was not a lawyer and wrote the will himself, without aid or suggestion. He and his wife owned a community estate, the testator's one-half being valued at $200,000. The will was dated on January 24, in a year not named, but was labeled "Will of C. M. Terrell, Colonel U. S. Army, Jan'y 24/97." It was filed for probate on December 17, 1904, and was duly probated. There were four children, issue of the marriage of Charles Milton Terrell and Sarah I. Terrell, Frederick, Henry, William, and Cornelia; the latter being the mother of appellant. The father of appellant was Col. Bartlett, an officer in the United States Army. Mrs. Cornelia Terrell Bartlett died in 1888 and Mrs. Sarah I. Terrell died about 20 years after the death of Col. C. M. Terrell; that is, in the latter part of 1924. Appellant was the only child of his parents, who survived them. William Terrell died without issue after the death of his father, Col. Terrell, and prior to the death of his mother, Sarah I. Terrell. The appellees, Frederick Terrell, Henry Terrell, and appellant were the only heirs and devisees and beneficiaries under two wills executed by Mrs. Sarah I. Terrell. A long list of lands and certain personal property of the total value of $400,000 was held by the community estate of Col. C. M. Terrell and Mrs. Sarah I. Terrell at the time of his death.

The will of Col. Terrell was as follows:

"State of Texas, County of Bexar.

"I, Charles M. Terrell, Colonel United States Army, being of sound mind and memory, do make and ordain this as my last will and testament, hereby revoking all previous wills at any time made by me before this date.

"I hereby appoint my wife, Sarah I. Terrell, my sole executrix, of and under this will and I hereby request of her that she counsel with and be advised by, my son Frederick and my brother Edwin H. Terrell and no other person, in her administration of this trust. I hereby expressly direct that no security be required of her, and that no action shall be had or taken by any county or probate court in the settlement or distribution of my estate, and no accounting required of my said executrix, other than the probating and recording of this will, and if required by law, the filing of an inventory of said estates. Whatever is absolutely necessary to this end only and nothing more.

"It is my will that my just debts and funeral expenses be paid as soon as the same can conveniently be done; that my funeral be simple and inexpensive; that a plain slab of marble or granite six to eight inches thick, with such an inscription cut into the same on its upper side as will serve to mark the last resting place of my body.

"It is my will that the remainder of my estate, real and personal, shall go to my wife, and be disposed of by her as she shall deem fair between our children, taking into account previous expenditures so nearly as she can estimate, made to or for each of them since childhood.

"In making the foregoing provision I am prompted by two objects. First, the prompt payment of my debts from the property found to be saleable and second, the depression so long existing in real estate by reason of which sale could not now be made except at a great sacrifice.

"As this will has been drawn up by myself and is now in my own handwriting, I am advised that it is not necessary my well-known signature should be attested by witnesses.

"Signed by me this the 24th day of January at the date of 64 years, 11 months, in the city of San Antonio, Texas.　　　　C. M. Terrell."

Mrs. Sarah I. Terrell qualified as independent executrix of the will, but in compliance with the terms of the will she sought the counsel and advice of Frederick Terrell, her son, and Edwin H. Terrell, her brother-in-law, and her three sons assumed the entire control of the estate and the executrix relied entirely upon them. After the partition of the one-half of the community property owned by Col. Terrell at his death, the three sons attended to and controlled the estate of both parents, and said executrix acted under their advice in connection with all the property. At the time the will was executed by C. M. Terrell, his three sons, who survived him, were living, but Cornelia Bartlett was dead when the will was written, leaving as her only heir the appellant, Charles Terrell Bartlett. The mother of appellant died when he was two years of age, and he was cared for by his grandparents until he was eight years old, at which time his father married again. His father was an army officer, with no financial resources, but dependent solely on his salary.

The foregoing comprise all that is absolutely required to be stated except as other statements become necessary in connection with the different points presented by appellant.

[1] In the will executed by Col. C. M. Terrell, after provision was made for the appointment of his wife, Sarah I. Terrell, his sole independent executrix of his will, and for the payment of his debts and funeral expenses, and for a simple funeral and monument to mark his grave, he provided:

"It is my will that the remainder of my estate, real and personal, shall go to my wife, and be disposed of by her as she shall deem fair between our children, taking into account previous expenditures so nearly as she can estimate, made to or for each of them since childhood."

About the construction of the words "our children" is concentred the controversy as to the construction to be placed upon the will. The executrix and the three children treated it as meaning the children as not including the grandchild, while it is the contention of appellant that he was embraced within the

words "our children" and that his grandfather intended that the only child of his deceased daughter should be included among "our children." If the testator, when the will was executed, intended to place the grandson among those described as "our children," that intention would control the construction, for, as said by this court in the case of Crosson v. Dwyer, 9 Tex. Civ. App. 482, 30 S. W. 929:

"The chief end to be attained in arriving at a just and equitable construction of a will is to ascertain the intention of the testator as expressed in the words of the will. All rules of construction should bend to this, the prime object of the investigation."

That decision met with the approval of the Supreme Court and has often been cited. As stated by Alexander on Wills, § 50, p. 55:

"In effectuating the intention of the maker of an instrument, the general rule is that if the language of the entire document shows an intention to provide for a general scheme for the disposing of property and such scheme is not contrary to law, it is the duty of the court to determine the instrument to be of such a character as will carry out the intention of the maker."

There can be no reasonable contention that the testator could not, if he so desired, confine the benefits of his estate to his own children and exclude the grandchild from such benefits, and in the absence of the statutes of Texas prescribing that when children are mentioned in a will, it should include grandchildren if all the circumstances tended to show that the testator did not so intend to include them his intention would prevail. There is no such law in existence, and the use of the word "children" will be given the meaning that it has in ordinary use. Such use would confine the word to the children and would not include grandchildren. It was alleged that Col. Terrell was unacquainted with law and law terms, and, being so unacquainted, he would use the words in his will with the usual signification.

Another significant and pertinent fact to show that the testator had no reference to the grandchild when he wrote of "our children" was that at the time he wrote his will his daughter had been dead for nine years, and it seems clear that if her child had been intended to be included in the will he would have described him as the son of my deceased daughter. At the time the will was written the grandson was not living with his grandparents, but was living with his father and stepmother. There was no association or propinquity to impress his individuality upon his grandfather, who states in the will that he bequeathed the property to the children for whom expenditures had been made since childhood. That description could not apply to a grandchild at that time who was in charge of his father and stepmother. The testator could not have intended to apply the description to the grandson, for had the portion that he might have desired to give to his deceased daughter been in his mind, he would not have expected or desired that portion to be allotted her child under the description given of the devisees in the will. No one except an attorney at law would have expected her offspring to be remembered in the will under the description "our children."

[2] The first proposition is that in section 14 of the Act of January 28, 1840, it is provided that under the name of children are included descendants of whatever degree they be, and was adopted for the purpose of precluding the common-law definition of children which confines it to children proper, when used in wills, and that when a devise is made to children it should have the meaning attached to it under the civil law. The law in regard to wills passed by the Congress of the Republic of Texas on January 28, 1840, was one of forced heirship, and in section 14 it is provided:

"That under the name of children are included descendants of whatever degree they be, it being understood they are only counted for the child they represent."

The object of that section was to define children as used in section 13, which forbade disinheritance of children by wills, except under circumstances stated therein. Gammel's Laws of the Republic for 1840, vol. 2, p. 344. If it was the intention to destroy the common-law rule in regard to who are included in the word children, it acted only in so far as section 13 of the act was concerned. The law of forced heirship was repealed in 1856 (Acts 1856, c. 85), and since that time the clause defining children has been confined to the statute in which it was afterwards inserted. It has never been prescribed by law in the state of Texas, since the law of forced heirship was repealed, that a testator cannot dispose of his property as he may see fit, and there has been no law that provided that when the word children is used in a will it shall have the forced construction of including the grandchildren of the testator whose parent was dead when the will was executed. Such being the case, the common law would prevail, and under that law grandchildren would not be included under the term children. Rev. Stats. 1895, art. 3258, of 1914, art. 5492, of 1925, art. 1; Railway v. Cluck, 97 Tex. 172, 77 S. W. 403, 64 L. R. A. 494, 104 Am. St. Rep. 863, 1 Ann. Cas. 261; Ins. Co. v. City of Austin, 112 Tex. 1, 243 S. W. 778.

[3] Until the repeal of section 13 of the Law of 1840, section 14 had reference only to the law prohibiting the disinheriting of children through wills, and afterwards when it was carried into the Revised Statutes of 1879 (art. 4870), it was changed so as to make it applicable to the word children "as used in this title." It could under that clause refer

only to the three articles immediately preceding it, that is, articles 4867, 4868, and 4869, which have reference to posthumous children and those born after the will was made. The clause has been carried in the Statutes of 1895 (art. 5346) of 1911 (art. 7868) 1914 (art. 7868), and 1925 (art. 8294), and in all of them the provision has been confined to "children as used in this title," and has no reference to wills in any other way. The common law did not use the word children as synonymous with descendants as did the civil law, and in order to place the civil law meaning on the word children there must be a statute clearly stating that when used in a will it must always mean descendants.

[4, 5] The law of descent and distribution does not apply to wills, for the law on descent and distribution was passed on the same day that the law on wills was enacted; the latter not containing the provisions of the former. As said by the Supreme Court in Burgess v. Hargrove, 64 Tex. 110, care is always taken, whenever other lineal descendants besides children are meant, to use the word "descendants," or if descendants are meant under certain circumstances then to say that children shall include them. As said in the cited case:

"In the ordinary acceptation the words 'child or children' referred to descendants in the first degree alone. If ever made to embrace issue further removed from the ancestor, it was by reason of express enactment to that effect or circumstances clearly authorizing such a construction. The Legislature must be presumed to have been familiar with the meaning of those words and the rules governing their interpretation. Yet they neither declared that the words should have a meaning synonymous with descendants, or placed anything upon record showing such to have been their intention."

Article 10, Rev. Stats. of 1925, being article 5502, Rev. Stats. of 1914, provides:

"The ordinary signification shall be applied to words, except words of art or words connected with a particular trade or subject matter."

And it can be safely asserted that to the average person child would not include grandchild. The inclusion of the two in the term children is a forced inclusion and out of the natural and common use of the word. The common and primary definition of child is a son or daughter, a male or female descendant in the first degree; the immediate progeny of human parents. Webster's Dictionary. Bouvier in his Law Dictionary says that a child is the son or daughter in relation to the father or mother and does not ordinarily and properly speaking comprehend grandchildren. We conclude that, in the absence of a statute making the term "children" used in a will include grandchildren, and in the absence of any allegation tending to show that the testator in his will had intended to include his grandson within the description "our children," he did not so intend. Ross v. Martin, 104 Tex. 558, 140 S. W. 432, 141 S. W. 518; Harle v. Harle, 109 Tex. 214, 204 S. W. 317, 15 A. L. R. 1261. As said by Alexander on Wills, § 840, pp. 1222, 1223:

"A testamentary gift to children, if there be children in existence, does not include grandchildren, stepchildren or adopted children."

The object in eliminating section 13 from the law of 1840 in regard to wills was to destroy forced heirship in Texas, and the insertion of the words "as used in this title," in the Rev. St. of 1879, was evidently for the purpose of confining the definition therein given of children to the three articles immediately preceding it, and to prevent making it a rule for the making of wills generally. If the Legislature had intended to make a radical change in regard to wills and bring them within the purview of the civil rather than the common law, it must be assumed that a law expressing that desire would have been passed and made clear and explicit, and not have confined the meaning of child or children to those sections or articles in the title on wills which had no reference to any except certain classes of children. Bank v. Ferguson, 109 Tex. 287, 206 S. W. 923. The second proposition is overruled.

There is nothing in the statutes to indicate that the law concerning wills should be construed in connection with the statute on descent and distribution, and that the law as to wills should not be construed as any other statute is construed and should not be so "liberally construed" as to set up a new rule as to wills and unsettle the policy of the state to follow the common law where it has not provided differently. It would be a new departure in Texas, to hold that whenever a testator uses the word "children" in his will he meant to include the children of a son or daughter who was dead when the will was executed. Among other authorities cited by appellant to sustain his third proposition is the case of Pimbel v. Betjemann, 183 N. Y. 194, 76 N. E. 157 (2 L. R. A. [N. S.] 580, 5 Ann. Cas. 239), in which the testator with knowledge of the death of one of his children directed that his executors "pay to each of my children who shall have arrived at the age of twenty-one years, the sum of ($500) five hundred dollars as soon after my decease as my executors conveniently can," and the court held that the bequest was to a class and indicated no intent upon the part of the testator that the issue of the deceased child should share therein, and that the law which permitted legacies to pass to children of a testator who were living when the will was executed had no application to children of a child dead when the will was made. Said the Chief Justice, speaking for a majority of the court:

"Nothing is better settled in the law of wills than that the term 'children' does not include

grandchildren or more remote descendants, unless there is something in the will to show that the word was used in a broader sense. This is not based on any technical rule of law; on the contrary, it is founded on the ordinary meaning of the word and the presumption that the testator has used the term in its ordinary sense. The decision below overturns this rule and declares that a devise or bequest to children of the testator includes grandchildren. * * * Where the testator names the deceased child there can be no room for doubt that he intends him or his issue to take, and the statute gives effect to that intent. Where, however, a testator writes or speaks of his children in general terms he does not include grandchildren."

That case fully sustains the judgment of the lower court. The Illinois case cited can have no force in this state, as it depended upon a statute of Illinois unlike any in Texas, and has no applicability to this case. The third, fourth, fifth, and sixth propositions under the first and second assignments of error are overruled.

[6] The first proposition under the second assignment of error has been fully met by what is herein written. The question in this case is not a negative one, as it is sought to be made under the proposition last named, but is a positive one. It is not a question of whether the testator intended to exclude the grandson from a participation in the benefits of the will, but did he intend to include him in the will under a description of the beneficiaries to which appellant did not belong? He was not a child as commonly understood, nor under the provisions of any statute, and the burden was upon appellant to show that the testator intended to include him under the general description of "our children."

[7-9] There is nothing of importance in the fact that an unknown party in Michigan construed the will of C. M. Terrell to include the grandson as one of his children, and that action cannot be invoked as having any bearing on the proper construction of the will, nor can the demand of the Michigan man for a quitclaim deed from appellant be used as authority to influence a court decision in Texas. The petition set up no grounds of estoppel as against appellees by alleging that the man in Michigan who had bought land from the Terrell estate demanded security against the claim of appellant, which demand was complied with by appellees. The first proposition under the third assignment of error is overruled.

[10, 11] The will must be construed by its own language, and not in the light of any agreement between the testator and his wife that she could give one-half of her one-half of the community estate to the grandson. The allegations show that both the grandparents believed he was giving, and that the testator intended to give, the whole of his estate to his three sons and that the grandson might receive something from the grand-

mother. Any agreement made between the grandparents as to the grandmother providing for the grandson out of her estate was without any consideration and was not enforceable. Such agreement did not tend to show that the grandfather intended to include appellant under the term "our children" in the will. There is no ambiguity whatever in the will, but it is brief, plain, and clear, and no evidence of what may have been said about the will by the testator and his wife would be permissible to change the meaning of the plain words of the will. The agreement between the grandparents bound neither of them, and if the grandmother gave the grandson part of her property it was voluntary and a mere gratuity on her part. Mrs. Terrell's agreement with her sons did not bind her estate in any manner, but depended upon a testamentary gift on her part which she could and did revoke. The agreements with her husband and sons were verbal and, relating to real estate as well as personal property, were invalid. Hooks v. Bridgewater, 111 Tex. 122, 229 S. W. 1114, 15 A. L. R. 216. She was not bound by the agreements, and the allegations as to the agreements were subject to general demurrer. Stovall v. Gardner, 100 Tex. 25, 94 S. W. 218.

[12, 13] The facts alleged show a will by Col. C. M. Terrell in which he bequeathed to his wife all his estate in trust for "our children," and a will by the grandmother a short while after the death of the grandfather, that is March 27, 1905, in which she devised one-half of her estate to appellant and the balance to her sons; stating in such will that it was executed because Col. Terrell had not included appellant in his will. They also show partition of the estate between Mrs. Terrell and her sons, and a second will by Mrs. Terrell, dated January 8, 1908, which revoked all other wills, and which, together with a codicil appended thereto on January 29, 1908, was the last will and testament of Mrs. Terrell. That will was duly probated after the death of Mrs. Terrell. On January 15, 1908, about one week after the last will was executed, the deed of release was made. In that will the grandmother bequeathed to appellant $15,000 in cash and certain lands in Bexar and De Witt counties, and it was provided in the will that the bequest was "to be in full satisfaction of any claim he may have, or might have had, in the community estate of my deceased husband, Charles Milton Terrell, deceased, and of my own estate, and must be accepted by him in writing, which was to be acknowledged and recorded." If such grandson refused to execute such writing, then the bequest was to be void. The bequest was treated by the executors as a present gift and was transferred to appellant by a deed executed by the grandmother and her three sons on January 15, 1908, and the same was accepted by appel-

lant as required by the will. The property conveyed by the deed was of the value at that time of $30,000.

The allegations show that appellant had no interest in the estate of his grandparents and that the property which was transferred to him was a gift to him by his grandmother, whatever its value, which he accepted, used, and enjoyed and never offered to return to the estate. Appellant had no claim upon the estate of his grandparents and was in no position to demand anything when the gift was made to him by his grandmother. He accepted the gift as a matter of course. He did it with full knowledge of the provisions of his grandfather's will and the partition of the estate as provided therein. The instruments are presumed to have been recorded and appellant was charged with a knowledge of them. His confidence in his uncles did not justify him in closing his eyes and stopping his ears in regard to everything connected with the estate.

[14, 15] While it is asserted that the grandmother was deceived and misled by the fraud of her sons, no facts were pleaded that would support the charge of fraud and deceit. The rule is that where a general demurrer is interposed to a pleading, the only question is whether the pleading discloses a cause of action, and while its effect is to admit the truth of every fact pleaded, it does not go to the extent of admitting as true every conclusion, surmise, or unfounded assertion of the pleader. The general demurrer admits facts when well pleaded and does not admit the conclusions, aspersions of character, and charges of fraud indulged in by the pleader. Holman v. Criswell, 13 Tex. 38; Fleming v. Seeligson, 57 Tex. 524; Prokop v. Railway, 34 Tex. Civ. App. 520, 79 S. W. 101.

[16] There was no fact pleaded tending to show that Mrs. Terrell was not fully cognizant of the fact that the deed which she signed with her sons and grandson was intended as a full settlement of all claims that appellant had or might have against the community estate of her and her deceased husband. If appellant did not know the facts, it was owing to his failure to inform himself. He seems to think he had a right to know what was in the will executed by his grandmother, but he had no such right, and she was fully authorized to deal with him and obtain a settlement of any and all claims he might set up, and destroy the effect of a will that she had made. She owed no duty to him to reveal the contents of her will to him. If he had known the contents of the will and had by reason thereof refused to sign the release, the testatrix could have destroyed it and have made one in which he was not named as a beneficiary, and of this he would have no right to complain. His grandmother made a will in his behalf which she revoked as she had the undoubted right to do. She had not made any contract with

appellant to give him anything, and her wills were not evidence of and did not constitute a contract. Appellant had not performed any consideration, had not assumed possession of any property, and of course had not placed any improvement on the property. The contract appellant is seeking to enforce comes clearly within the condemnation of the Supreme Court. Hooks v. Bridgewater, 111 Tex. 122, 229 S. W. 1114, 15 A. L. R. 216.

In the case cited the suit was to enforce a verbal contract made by the father of the plaintiff to surrender the custody of his son to another who agreed to care for him and make him his heir. That verbal contract was made the basis of the suit against the administrator of the man with whom the father contracted. The Supreme Court held that the contract could not be enforced because in derogation of the statute of frauds. The will did not lift the matter out of the reach of that statute.

The will of Col. C. M. Terrell and the wills of Mrs. Terrell, as well as the contract of release, were copied into the petition, and the trial court, as well as this court, was fully authorized to pass upon and construe those instruments, independent of any conclusions appellant may have stated in the petition. His conclusions as to the written instruments were not taken to be true when the pleadings were attacked by a general demurrer.

The codicil to the last will was written on the same day the property was accepted by appellant in the handwriting of the testatrix, and in that codicil she recited that having conveyed to him the property bequeathed to him in her will and paid him the $15,000 in cash, he should have nothing more, and all the remaining property she owned was bequeathed to her sons. It is sought to assail this codicil by bare assertions of undue influence and fraud, in a vague and general way, the allegations bearing evidence in themselves that appellant was not stating facts but conclusions arising from his surmises and imagination. No facts are alleged that tend to indicate fraud or undue influence. We reiterate that appellant was not entitled to anything from his grandfather's estate and what was conveyed to him from his grandmother's estate was merely a donation and gratuity.

[17, 18] Appellant, having alleged that he was two years of age in 1888, when his mother died, must have been born in 1886, and consequently became 21 years of age in 1907, the year before he executed the deed of release to all claims upon the community estate of his grandparents. He knew that his grandfather had died years before that time, he knew that his will had been probated and his property partitioned among the devisees, and he knew that no property had been allotted to him. The law imputed to him knowledge of these matters. Boren v. Boren, 38 Tex. Civ. App. 139, 85 S. W. 48. As said

in the case of Powell v. March (Tex. Civ. App.) 169 S. W. 936, approved by the Supreme Court:

"If, as has been well said, it appears from the complainant's own allegations that the means were at hand to readily discover the fraud complained of, and such means of information would have been used by a person of ordinary care and prudence in the transaction of his own business, then he will be held to have had notice of everything which a proper use of such means would disclose; and, a failure to avail himself of such means or avenues of information appearing, the issue presented is one of law for the decision of the court, and not a question of fact for the determination of the jury."

In that case only four years had elapsed before the fraud was discovered, and the excuse given was confidence in the person with whom the plaintiff had dealt. That is the excuse in this case. In the case of Kuhlman v. Baker, 50 Tex. 636, the Supreme Court held:

"If the alleged fraud constituted a sufficient reason why appellant did not, at the time the sale was made, discover that the quantity was not as represented, his subsequent failure to inform himself of such an important matter as the quantity of land contained in the tract purchased was attributable to his neglect and want of ordinary precaution."

Again in the case of Bass v. James, 83 Tex. 110, 18 S. W. 336, appellant relied upon his confidence in the integrity and veracity of the appellee as his excuse in failing to sooner discover the fraud. Three years had elapsed before the suit was instituted, and the court held:

"If three years after the transaction the appellant by methods then used successfully detected the fraud, we see no reason why a resort to such methods before then could not have accomplished the same purpose."

The facts alleged show that appellant could have ascertained all the facts that he obtained 17 years after he executed the deed, had he made any effort to do so. He could have conferred with his grandmother, but he did not do so. He could have inquired of his uncles, but made no effort to do so. Everything was open to him, the will of his grandfather, the partition of the estate, the recitations of the deed signed by him, and yet he made no attempt to investigate. He claims that he rested in supreme confidence in the affection and integrity of his uncles, but this he was not justified in doing with the facts of what they had done in connection with the estate open to him. He might have been excused for placing such childlike confidence in his mother or father or even in his grandmother, but not in his uncles, to whom he was bound by no special circumstances causing his trust in them, but only by the ordinary ties of consanguinity. No effort was made to discover the fraud, no inquiries made in regard to his rights in the property of his grandparents, but supinely for 17 years he sat calmly by while the property was being used and enjoyed by others. He waited until after the death of his grandmother, when probably the uncles and his cousin would not be permitted to testify as to any conversations or dealings with the deceased grandparents. He alleged no fraudulent representations or concealment on the part of his uncles, except that they did not tell him about a revoked will of his grandmother, which had no bearing on the estate. They were under no obligation to reveal to him their business affairs; it was his duty to be diligent in protecting his own interests. "Equity aids the vigilant, not those who slumber on their rights." Nothing can call forth a court of equity into activity but conscience, good faith, and reasonable diligence. Pom. Eq. Jur. §§ 418, 419.

The judgment will be affirmed.

## On Motion for Rehearing.

Nothing is suggested in the voluminous motion for rehearing that had not been fully ventilated in the brief, and we adhere to the opinion heretofore rendered and assailed in the motion. Much of the consideration given to the construction of the will of Col. Terrell might have been pretermitted in the light of the action of appellant in voluntarily and with all the facts necessary to a full understanding before him and all the facts and circumstances bearing upon his act at hand and easily attainable in executing the release. He alleged nothing bearing upon the release that casts any suspicion upon the good faith of the departed grandmother and his uncles. He signed a full release of all claims upon the estate of his grandparents with his eyes open, and he will not be heard in a court of equity and good conscience to plead childlike confidence and blindness to his surroundings in order to avoid his acts. He executed the release, and "as he bound himself so shall he be bound."

It must be kept in mind that appellant came into a court of equity to invoke equitable remedies, and the rules of a court of equity must govern in deciding the righteousness of his demand. The law of limitations has not been applied to appellant, but the rules governing delay and laches. As said an English judge and copied into section 1442, Pom. Eq. Jur.:

"The doctrine of laches in courts of equity is not an arbitrary or technical doctrine. Where it would be practically unjust to give a remedy, either because the party has, by his conduct, done that which might fairly be regarded as equivalent to a waiver of it, or where, by his conduct and neglect he has, perhaps, not waiving that remedy, yet put the other party in a situation in which it would not be reasonable to place him if the remedy were afterward to be asserted in either of these cases, lapse of time is most material."

An American judge thus accurately and lucidly states the rule:

"Several conditions may combine to render a claim or demand stale in equity. If by the laches and delay of the complainant it has become doubtful whether adverse parties can command the evidence necessary to a fair presentation of the case on their part, or if it appears that they have been deprived of any such advantages they might have had if the claim had been seasonably insisted upon, or before it became antiquated, or if they be subjected to any hardship that might have been avoided by reasonably prompt proceedings, a court of equity will not interfere to give relief, but will remain passive; and this although the full time may not have elapsed which would be required to bar a remedy at law." Wilson v. Wilson, 41 Or. 459, 69 P. 923.

Much of the property affected by the claim of appellant lies in the city of San Antonio and its immediate vicinity, and it is judicially known that San Antonio has increased greatly in population and that real estate in and about it has been much enhanced in value, and it will be presumed that much of the land described in the petition has been conveyed by appellees to others, and it would be unjust and inequitable to permit appellant, charged with knowledge of all the facts alleged by him, to sit calmly by for 17 years and take no action while rights of third parties were intervening, and until death had destroyed the testimony of the grandmother and of Edwin H. Terrell and William Terrell, and when the lips of appellees would be closed as to any transactions or conversations with their parents.

The motion for rehearing is overruled.