**NATIONS et al. v. ULMER et al.**

No. 3900.

Court of Civil Appeals of Texas. El Paso.

Jan. 25, 1940.

Rehearing Denied April 4, 1940.

Isaacks & Lattner, of El Paso, for appellants.

Whitaker, Perkins & Turpin, of Midland, for appellees.

PRICE, Chief Justice.

This suit was brought in the District Court of Midland County by Henry Clay Nations and others against M. C. Ulmer and Charles L. Klapproth, as independent executors and trustees of the last will of Emily E. Crier, deceased. A branch of this case has been before this Court once before. At that time the trial court sustained the plea in abatement urged by defendants Ulmer and Klapproth, from which plaintiffs appealed, and upon appeal the case was reversed and remanded for error in sustaining the plea in abatement. Nations et al. v. Ulmer, 122 S.W.2d 700. The case is here upon a trial on the merits before the court in which the judgment was in favor of the defendants adjudging that plaintiffs take nothing by their suit. From this latter judgment plaintiffs duly perfected their appeal and the case is here for review.

Involved in the case was the construction of the last will of Mrs. Emily E. Crier, deceased. It is claimed by the plaintiffs that defendants, as trustees and executors, have retained more fees than they were legally entitled to retain under the will.

In order to discuss the matters involved it will be necessary to set out the will at length and the codicil thereto.

"First: It is my will and wish that my Executors and Trustees hereinafter named, shall pay any and all indebtedness which I may owe at the date of my death, including the expense of my last illness, if any, and my funeral expenses and a reasonable sum, not to exceed $500.00 to mark my last resting place, and for this purpose they shall have power to sell so much of any assets of my estate as may be necessary to procure funds for that purpose.

"Second: And whereas, my estate consists in a large measure of producing oil royalties, the income from which is variable, and which may finally disappear altogether.

"And whereas my son, Harold Roland Bloom, in my opinion is unfit to receive and manage the properties of which I may die possessed, and I desire to so arrange the same as to care for him during his lifetime.

"Third: Now, therefore, it is my will that at my death, all my property of whatsoever nature, kind or character, real, personal or mixed, shall pass to M. C. Ulmer and Charles L. Klapproth, Trustees, or their substitutes or successors, and that the same shall vest in them for the purposes of this trust and be administered by them or their successors, as hereinafter provided for under the terms and directions hereinafter contained.

"The terms and conditions of the trust herein created are as follows:

"(a) I desire the expense of this trust to be paid out of the income from my properties including a suitable compensation to the Trustees herein named, or their successors, as herein provided for, which compensation, however, shall never exceed ten per cent of the gross income.

"(b) After the expenses of this trust have been paid, I desire that my Trustees hereinabove named, or their successors in this trust, shall pay over to my beloved son, Harold Roland Bloom, the remainder of the income, until such payments amount to Three Hundred Dollars ($300.00) per month; that is to say, that they shall pay to him all of said income if less than $300.00 per month, whatever the amount may be.

"If the income exceed $300.00 per month, after the payment of the expenses of this trust then I direct them to pay to my sister, Mrs. V. A. Shirk, the sum of Seventy-five Dollars ($75.00) per month, or so much thereof as said income may justify.

"In the event the income from my property should justify and be more than $375.00 per month, after the expense of administering the trust is deducted, then I direct that my Trustees, or their successors, shall pay to my son such additional amounts as may be earned, up to the sum of $500.00 per month.

"In the event that the income is greater than $500.00 per month, after deducting the expense as before provided, then the excess thereof shall be accumulated in the hands of the Trustees, or their successors and be disposed of as follows:

"Should the income at any time be less than $300.00 per month, after the payment of expenses, then such accumulation may be drawn on to supplement the income for such amount as added to the income will pay the $300.00 per month above provided for to my son, and this may continue from month to month until the accumulation is exhausted.

"The sum above provided to be paid to my sister, Mrs. V. A. Shirk, shall not at any time be paid out of the accumulation, if any, but shall only be payable when the income is sufficient as hereinbefore provided.

"Should there remain any part of the accumulation at the date of the death of my son, after application as hereinbefore directed, then the same shall become a part of my permanent estate.

"Fourth: (a) At the death of my son, should he leave an heir of his body surviving, the trust herein created shall continue for the use of said heir or heirs of his body until such heir or heirs become of age, at which time the body of the property shall be delivered over to such heir or heirs.

"(b) Should my said son die leaving no heir or heirs of his body, then it is my will that the principal of said trust be distributed as follows:

"One-third thereof shall pass to my beloved sister, Mrs. V. A. Shirk, and thereupon, of course, the provision hereinabove made for her shall cease.

"Two-ninths thereof shall pass to my beloved sister Mrs. Clara J. Looney, and the remaining four-ninths shall pass, share and share alike to the heirs of the body of O. C. Nations and to the heirs of the body of H. O. Nations.

"Fifth: I hereby nominate and appoint M. C. Ulmer and Charles L. Klapproth as Executors of this my last will and testament, and as Trustees hereinabove named hereunder. Should either of them fail or refuse to qualify, the other is hereby authorized to act as fully as if both had qualified.

"Should both of them fail or refuse to qualify then the County Court having jurisdiction of the probate of this will shall appoint two suitable trustees to act hereunder.

"In the event that the Trustees herein named or either of them, accept this trust and qualify herein, no bond shall be required of him or them, and no action shall be had in the probate court, in that event, except such as is necessary to probate my will and establish this trust.

"In the event of the appointment of substitute trustees or successors to the trustees herein named, then and in that event the

said trustees so appointed shall give bond as required by law in the administration of estates.

"My Trustees herein appointed, or those named to succeed them, or named to fill the vacancy, should there become a vacancy in this trust, shall have full power to collect, receive and distribute all money income arising from my estate in accordance with the directions hereinabove stated.

"The trustees, or their successors as herein provided, shall have the power to control, manage and dispose of non-revenue producing properties belonging to my estate, if in their judgment it seems to the best interest of the trust estate so to do, and in that event, they shall have full power to invest and re-invest the full proceeds thereof, and the income therefrom of such investments and reinvestments shall become a part of my estate as hereinbefore defined and be applied to the uses hereinbefore directed.

"They shall further have the power, and they are hereby directed, that in the event the income from this trust estate and the accumulation thereof should be insufficient to pay to my son the sum of $300.00 per month as hereinbefore directed, then they may in their discretion apply the principal derived from non-income bearing properties to the payment of said sum of $300.00 in order that my son may be provided for, but the payment of any and all sums out of the principal of my estate shall be within the sound discretion of my trustees herein named, or their successors.

"I direct, however, that none of the income producing royalties shall be sold during the life of this trust, except such as may be required, if any, to pay my debts and funeral expenses."

The codicil was dated April 23, 1931, and was as follows:

"That paragraph a on page 2 of said will is hereby revoked and the following substituted therefor:

"I direct that the expenses of this trust be first paid out of the income and that the expense here directed to be paid shall consist of and include:

"Any and all items of court costs and commissions accruing under the law as in the administration of estates.

"Any and all attorney's fees or other expense necessary to incur in maintaining the property or reducing the same to possession.

"An additional amount of ten per cent of the gross income which is hereby named as compensation to the trustees in addition to fees and commissions allowed by law in the administration of estates, which said commission and compensation the trustees may retain without any judicial ascertainment."

At the time of the making of this will on April 10, 1931, Mrs. Crier was possessed of property of the same general nature and character as that possessed at the time of her death. Her property largely consisted of producing oil royalties. The rest of her property was of relatively small value. Among the assets, however, was a note in the sum of $6,000, signed by W. C. Looney, dated 2nd day of February, 1927, due five years after date. This note was inventoried as being without value. Clara J. Looney, the wife of W. C. Looney, had a contingent interest in the estate under the will in case of the death of Mrs. Crier's son, Harold, leaving no heir or heirs of his body. Mrs. Crier was survived by one son, Harold Roland Bloom. This son was married and his wife afflicted with tuberculosis, and the son was a drug addict. He died, without an heir of his body, before the institution of this suit. The defendants Ulmer and Klapproth knew of the provisions of the will before the death of Mrs. Crier and before the making of the codicil thereto dated April 23, 1931, and it was perhaps at their suggestion or insistence that the codicil was added. On account of Harold Bloom's unfortunate addiction it was anticipated that it might be harassing and vexatious to deal with him in the administration of the trust.

Shortly after the death of Mrs. Crier, which occurred sometime about 1932, defendants Ulmer and Klapproth qualified as independent executors and took charge of the administration of the estate. In the course of the administration they collected on producing royalty the sum of $30,665.82. These royalty payments were from runs of oil under land in Crane and Upton Counties. $13,520 was realized from the sale of 150 acres of royalties in Crane and Upton Counties. Two pieces of real estate in the town of Midland were sold for the sum of $3,500. The Looney note for $6,000 was renewed in the sum of $7,619, and Mrs. Clara J. Looney pledged one-half of her interest in Mrs. Crier's estate to secure this note. There has been paid on this note the sum of $2,000 in cash, and the balance was paid

by Mrs. Looney by conveyance of one-half of her interest in the estate of Mrs. Crier to the other beneficiaries under Mrs. Crier's will. The amount realized on this note seemed to have been in cash and value the sum of $9,043.76.

On the $30,665.82 collected from royalty the defendants retained and hold fifteen per cent thereof, claimed as compensation under the will; likewise as to the sum of $13,520 realized as before mentioned; also on the sum of $3,500 from the sale of the Midland property. The defendants, on the transaction above mentioned in regard to the Looney note, retained as compensation for their services fifteen per cent of $9,-043.76.

Among the findings of fact of the trial court the following appears: "In alloting to themselves the commissions and compensation as executors and trustees under said will, the said defendants, M. C. Ulmer and Charles L. Klapproth, acted in good faith and their construction of the will is a reasonable and fair one and the true and correct interpretation as to the compensations due them as executors and trustees under said will, and that they have endeavored to follow the directions and instructions given them in the will and have fairly and in good faith used their best judgment in the determination of the amount of their compensation."

■ It is elemental and fundamental that a will should be construed in accordance with the intention expressed therein by the maker. In arriving at this intention the entire instrument is to be taken into consideration. Further, as an aid to interpretation, the circumstances surrounding the maker and the nature and character of the property possessed may be considered. 44 Tex.Jur., Wills, § 141, p. 698; § 143 p. 701; § 156, p. 717; § 187 p. 754; Lindsey v. Rose, Tex.Civ.App., 175 S.W. 829; Bartlett v. Terrell, Tex.Civ.App., 292 S.W. 273; Jackson v. Templin, Tex.Com. App., 66 S.W.2d 666, 92 A.L.R. 873.

■ Appellees contend that under the findings of fact, they in good faith made a reasonable construction of the will in respect to their compensation, and the matter is legally foreclosed. We think this finding of fact is sustained by the evidence. We may add that in our opinion from the record appellees have administered this estate with great fidelity and efficiency.

■ If by the terms of the will defendants were made the arbiters of the amount of their compensation, we think a reasonable construction made in good faith would be binding on all concerned.

■ A provision in a will making the decision of the executor binding on disputed questions as to the construction thereof is a valid provision. If such a decision is fairly and honestly made and the will is reasonably susceptible of such construction same is final. Couts v. Holland et al., 48 Tex.Civ.App. 476, 107 S.W. 913; Grant et al. v. Stephens, Tex.Civ.App., 200 S.W. 893; 69 C.J. p. 124, § 1166.

■ The provision relied on to confer arbitral powers on the trustees is to be found in the codicil. There it provides the trustees may retain as compensation in addition to fees and commissions allowed by law in administration of estates ten per cent of "gross income without judicial ascertainment." In our opinion this will does not confer arbitral power on the trustees. In the cases above cited the provisions conferring such power of construction were clear and distinct. The word "ascertainment" in the clause in question means, we think, determination. The whole phrase construed with the context means that they may retain their compensation without first having same judicially determined. It may, perhaps, be contended with some logic that the provision as we have construed it renders same meaningless. However, the construction given with the will, in that an administration is contemplated with the minimum of judicial control. In order to confer the function of arbiter on a fiduciary in a matter in which his personal interest necessarily conflicts with the interest of the beneficiaries, the intent to do so should clearly and unequivocally appear from the context of the will.

■ Considering this will as a whole, defendants served in a dual capacity: First, they were independent executors, bound to administer the estate in that respect in accordance with the directions of the will and the law; second, they were trustees of the testamentary trust created by the will. The only limitation placed upon their power as independent executors was that oil producing royalty was not to be sold unless it was necessary to pay the debts. As testamentary trustees the legal

title was vested in them for the purposes of the trust to all of the property of the estate. This title, was, of course, vested subject to the duty to administer. After the debts and expenses of the administration were paid the title to all property remaining vested in them for the purposes of the trust. McClelland v. McClelland, 46 Tex.Civ.App. 26, 101 S.W. 1171.

As in all cases where the same party is named independent executor in a will and trustee of a testamentary trust, it is difficult to distinguish between what power is intended to be conferred in the capacity of executor and what power as testamentary trustee. In this case, as in most cases where this situation exists, in the exercise of the powers it is hard to determine in which capacity the trustee or executor acted. Of course, when all the debts are paid, expenses of administration, the duties as executor are discharged. Henceforth the power is that granted to the trustee. But at times during the course of the administration it may be necessary for them to exercise the powers and assume the duties of trustee. In many respects their duties as executors and trustees were identical.

One thing is clear from this will: It was the paramount intention of the testatrix to provide for the support and maintenance of her son. The record does not show what payments were made to the son, nor at what time. However, there was no good reason why, with remaining property on hand sufficient to satisfy the creditors, that distribution should not have been made to the son in accordance with the provisions of the will before the completion of administration. These payments, we take it, were in the nature of a distribution.

These payments from royalty, it is conceded by both plaintiffs and defendants, were considered by the testatrix as part of the gross income of her estate referred to in the will and codicil. This construction is compelled by the fact that from no other source could these monthly payments be realized. The will refers to two classes of property possessed by the testatrix, income producing and non-revenue producing properties.

■ We think it fair to assume that the testatrix, as income producing property, had in mind the royalty and the Looney note; as non-revenue producing property, all other property possessed by her. This was the situation at the time of the making of the will and likewise at the time of her death. In regard to what is referred to in the will as non-revenue producing properties, the will confers the power on the trustees to sell same and to invest and reinvest the proceeds; the income from such investments and reinvestments to become part of her estate and be applied to the uses directed. The use directed was the payment of the monthly stipend to her son. It was certainly contemplated that the earnings of these investments be part of the income of the estate. It seems clear to us that Mrs. Crier considered the possible income derived from the investments authorized and the proceeds of the royalty as the gross income of her estate, or rather, perhaps, the estate held by the trustees. There was no other possible source of anything partaking of the nature of income accruing to the trust estate. The property consumed in the payment of debts was gone. The only power defendants had as testamentary trustees was to sell the non-revenue producing property for the purpose of investment. They were not allowed to expend the principal of such investments unless it was necessary to make the monthly stipend equal $300. In such case the power was purely discretionary.

■ If this construction of the will be correct, we think that the defendants were entitled to retain fifteen per cent of all moneys realized from unsold royalty—the five per cent allowed for administrators and the ten per cent additional provided for in the codicil; for property sold and the proceeds devoted to the payment of debts, five per cent on the amount realized by the sale and five per cent additional on money paid out in satisfaction of debts and expenses of administration, other than for the compensation of defendants.

From the will as originally written it might have been contended with a basis of reason that ten per cent of the gross income was the only compensation, whether acting as executors or trustees. The codicil renders it clear that compensation in both capacities was intended. Under the codicil the fees as trustees were in addition to the compensation allowed by law to executors. This construction, in our opinion, gives them the ten per cent as contemplated by the testatrix and also in addition the fees allowed by law in administration.

■ There is not before us a complete statement of the amounts paid out on debts of Mrs. Crier, nor for expenses of admin-

**358**

istration, taxes, etc. In regard to the Looney note, we are of the opinion defendants are entitled to five per cent on the principal of $6,000. The Looney note was appraised as worthless. It is conceded that through the efforts of the defendants $9,043.76 was realized thereon. We are of the opinion that the above recited facts constitute a collection in that amount. The amount collected above six thousand is income and commission should be paid on same as such.

■ We are unable to determine from the record the date of the death of Harold Bloom. In a just decision of this case that fact may be important. Upon the death of Bloom the powers and title of defendants as testamentary trustees ceased. Upon his death the legal title to all property vested in the devisees under the will. If, on the date of his death, the administration was complete, distribution should then have been made; if administration was not complete, defendants had the right to hold possession thereof and dispose of same for that purpose only. Defendants' estate expired by limitation upon the death of Bloom.

We think justice would be best subserved by remanding this case for a new trial in accordance with this opinion.

Reversed and remanded.

### On Rehearing.

Appellants and appelless have each filed motions for rehearing herein. Appellants pray that we ascertain the amount of commissions due and enter judgment for the amount of excess retained by appellees. Appellees seek to have us set aside our former judgment and affirm the judgment of the trial court. We will first consider the motion of appellants.

It might be that we could, by reference to the statement of facts, get an idea of the total amount collected and disbursed. The pleadings of plaintiffs do not seek judgment against defendants personally. The gravamen of the action is for a construction of the will, and that there then be a distribution order.

■ Appellants further allege that since October, 1937, appellees have collected various sums of money, the amounts of which they do not know. Appellee's answer referred to an audit attached thereto. If same was ever attached it does not appear in the transcript. Possibly it is in the statement of facts. We are in grave doubt as to the sufficiency of plaintiffs'

pleading to support the judgment which it is sought to have us render. In order to award the relief now sought we would have to go beyond the relief prayed for in the petition. A judgment for the excess commissions retained would not represent appellants' ultimate rights herein.

Appellants' motion is overruled.

■ In appellees' motion there is urged a ground which we did not discuss in the original opinion. It is stated in substance that plaintiffs, acting through their attorney, agreed that defendants might retain as compensation fifteen per cent on the Looney note. There is no consideration pleaded for the accord and satisfaction urged. It is true plaintiffs do not plead want of consideration. The matter is urged as an estoppel. How and in what defendants have changed their position does not appear from the answer. Even on the hypothesis that the matter alleged under the proof is a defense, it is only a partial defense.

On another trial the respective parties might desire to amend their pleadings. On the whole we think it best to overrule each motion. It is so ordered.