### LEONORA PRIETO V. H. LEONARDS.

Decided April 8, 1903.

**Will—Independent Executor—Power to Borrow Money.**

Where by the terms of a will C. was appointed independent executor without bond and empowered to "handle, manage and control" the estate of the testatrix, and to "sell, release and convey, by deed or other conveyance," any and all her property, which property, or the proceeds of the sale thereof, were to be held by him in trust for her daughter during the latter's life, such executor had power to bind the estate by giving a note for money borrowed to pay debts of the estate, and to secure such note by depositing as collateral a vendor's lien note belonging to the estate, and the lender of the money was not bound to see to its application to the debts of the estate.

Appeal from the District Court of Bexar. Tried below before Hon. S. J. Brooks.

*B. F. Ballard* and *L. B. Wiseman,* for appellant.

*J. D. Guinn* and *Martin J. Arnold,* for appellee.

FLY, ASSOCIATE JUSTICE.—The appellee instituted suit in the District Court against John C. Grier, L. B. Camp, executor of the estate

of R. L. Grier, and D. Mayes and Leonora Prieto, the appellant, alleging that John C. Grier, on December 14, 1899, executed and delivered to L. B. Camp, as executor aforesaid, his promissory note for $1500, due eight years after date, and bearing 8 per cent interest per annum, it being provided that a failure to pay the interest should mature the note, and that said note was given as the purchase money of 267 acres described in the petition. It was further alleged that in December, 1899, the note was transferred to H. W. Haas, who immediately thereafter sold and delivered the same to appellee. It was alleged that appellant and Mayes were setting up claim to the note and security. Appellee prayed for cancellation of the claim of appellant and Mayes, and for judgment against John C. Grier for the debt, and for foreclosure of the vendor's lien on the land.

L. B. Camp answered by general demurrer and general denial. Leonora Prieto and E. D. Mayes filed general and special exceptions and answered that Refugia L. Greer died on April 29, leaving a will in which Leonora Prieto was sole legatee, L. B. Camp being made independent executor thereof, without bond, and E. D. Mayes substitute executor in case of the failure or refusal of L. B. Camp to act; that Camp took possession of the property and disposed of it, selling to John C. Grier the 267 acres of land described in the petition, for which he gave the note of $1500 sued on in this case. That Camp afterward transferred the note to Haas as security for a note for $700 executed by Camp for his personal benefit, and that neither Camp nor Haas acquired any right to the $1500 note which was and is the property of Leonora Prieto. It was further alleged that John C. Grier had conveyed 100 acres of the land, for which the note was given, to Ferdinand Kloesel for $1000, and that therefore Kloesel was a proper and necessary party to this suit. E. D. Mayes disclaimed any personal interest in the suit, his only interest being as executor because of the removal of Camp from the executorship by the District Court of Wilson County.

Ferdinand Kloesel and Alosia Kloesel, his wife, intervened in the suit, alleging that they had bought 100 acres of the 267 acres of land from John C. Grier without knowledge of the existence of the $1500 note, and prayed that the court refuse to decree a foreclosure of the vendor's lien as to that part of the land, and in the event of such foreclosure that it be decreed that the remaining 167 acres of the land be first sold, and that the 100 acres bought by them be sold only in the event that the 167 did not sell for enough to pay off the note sued on.

It was adjudged by the court that Leonards should recover from John C. Grier the sum of $948.20 with interest, from date of judgment, at 9 per cent per annum, and that the vendor's lien be foreclosed on the 267 acres of land, but that the 167 acres of land which remained after the sale to Kloesel be sold first, and the 100 acres sold to Kloesel should not be sold unless the 167 did not sell for a sufficient sum to pay the amount due Leonards. It was further ordered that if the 167 acres of land sold for enough to pay the amount due Leonards, the amount real-

ized from the sale should be credited on the $1500 note, and the note be delivered to the representative of the estate of R. L. Grier, and that the vendor's lien should be in effect to secure the balance due on the note. It was also provided that in case the 167 acres of land did not bring sufficient to satisfy the debt, and the sale of the remaining 100 acres of land brought more than was necessary to pay the balance on the note, it should be paid to the R. L. Grier estate.

From the findings of fact by the district judge this court deduces the following conclusions of fact: In the will of Refugia L. Grier, which was duly probated in Wilson County on July 3, 1899, it was provided that L. B. Camp should be appointed executor, without bond, of her estate, and that in case of his death or refusal E. D. Mayes should become executor without bond. All of the property of the testatrix, of every description, was bequeathed to her daughter Leonora Grier, now Leonora Prieto, but "to be held, managed and controlled" by the executor as directed in the will. The fourth clause of the will was as follows:

"It is my will, and I so direct, that my said executor, Lafayette B. Camp, or in case of his failure to act, then the said E. D. Mayes, shall have full power and authority to handle, manage and control my said estate after my death, with full power and authority to sell, release and convey by deed or other conveyance any and all property owned by me at the time of my death, in such a manner as to him my said executor may seem right and proper, and it is my will, and I so direct, that my said estate be held by my said executor Lafayette B. Camp, or in case of his death or failure to act, then by my substitute executor E. D. Mayes, in trust for the benefit of said daughter Leonora Grier, said property or the proceeds of the sale thereof to be held by my said executor in trust for the benefit of my said daughter Leonora Grier, and to be applied by said executor to the support and maintenance of my said daughter Leonora Grier during her natural life, and at her death my said executor is authorized and directed to turn over and divide any property then remaining between the heirs at law of my said daughter Leonora Grier, said division to be made equally between her said heirs at law, but it is my will that my said estate be held, managed and controlled by my said executor in trust during the natural life of my said daughter Leonora Grier, and it is my will and desire, and I so direct, that no bond be required of my said executor, Lafayette B. Camp or of my substitute executor, E. D. Mayes, on account of their trust herein created." The will provided that all the debts of the testatrix should be paid.

It was also provided that no control should be exercised by the probate court over the estate other than to probate the will. On December 14, 1899, L. B. Camp, executor, conveyed to John C. Grier 267 acres of land out of the L. Manchaca grant in Wilson County, and Grier, in part payment for the land, executed a note for $1500, due in eight years, bearing interest at 8 per cent, payable annually, provision being

made that the note should mature upon the nonpayment of any part of the interest when due. It was expressed in the note that it was given for purchase money of the land, and a vendor's lien was acknowledged.

On April 14, 1900, L. R. Camp, as executor of the estate of R. L. Grier, deceased, made, executed and delivvered to H. W. Haas an assignment of the $1500 note executed by John C. Grier, together with the superior title held by him in the land sold to Grier, the transfer being made to secure the payment of a note of even date for $700, executed by Camp, as executor, to Haas, due in four years, and bearing interest at 9 per cent. In the $700 note it was stated that the $1500 note had been deposited with Haas to secure its payment. The note was indorsed to Leonards by Haas. The $1500 note given by John C. Grier to Camp is the one sued on in this case, and was worth its face value. On August 29, 1901, John C. Grier and wife sold to F. Kloesel 100 acres of the 267 acres of .land sold to Grier by Camp for $1000, and Kloesel paid on the purchase money $333.33 1-3. The note for $1500 was sold at private sale by Leonards, as he was empowered to sell by the contract of assignment made by L. B. Camp, executor, after due notice to John C. Grier, to raise money to pay the $700 note executed by Camp, and was bid in by Leonards for $50, which was held to be an inadequate price by the district judge, and the sale was set aside.

The note for $700, executed by L. B. Camp, was for money received by the R. L. Grier estate from Haas; and it was represented to Haas that the money was to pay pressing debts due by the estate of Refugia L. Greer, deceased. Camp acted in his capacity as independent executor of the estate of Refugia L. Grier in assigning the $1500 note, with the superior title to the land, and in signing the note for $700."

The trial court found that the $700 obtained by Camp from Haas was received by the estate of Refugia L. Grier, and that at the time the money was obtained the executor stated that the money was to be used to pay the debts of the estate, and so far as the holder of the note given for the money was concerned, it did not matter whether it was used by the executor to pay .the debts of the estate or was appropriated by him for his own use and benefit. If the executor was invested, by the terms of the will, with the power and authority to give his promissory note and deposit the note given for the land as collateral security for the payment of the note executed by him, the duty did not devolve on the payee of the note to inquire as to the existence of debts, or to concern himself as to the manner in which the money was appropriated. Blanton v. Mayes, 72 Texas, 417; Terrell v. McCown, 81 Texas, 254; Stevenson v. Roberts, 64 S. W. Rep., 230.

The only question presented by the record is as to whether, by the terms of the will, the independent executor had the authority to bind the estate by giving his note and hypothecating the note given by John C. Grier for the land, to secure its payment. By the terms of the will the executor was authorized "to handle, manage and control" the estate, "with full power and authority to sell, release and convey by deed or.

other conveyance any and all property owned" by the testatrix as to the executor might "seem right and proper."

In the case of Faulk v. Dashiell, 62 Texas, 643, the will gave the power to the executor to "take full charge of my estate and manage and control the same, as he may think best for the interest of my children before named, and I hereby fully empower him, my executor, to sell, exchange and dispose of my estate as he may deem neccessary for the interest of my said children." The court discussed the question fully, and arrived at the following conclusion: "We are of the opinion, therefore, that there was ample authority conferred by the will on the executor to mortgage the land; and under a power for purposes so general and undefined as to particulars, the mortgagee would not be bound to ascertain the necessity for the loan to the executor, nor to see to the application of the money. * * * If, however, we are to regard the power conferred on the executor 'to sell, exchange or dispose of as he may deem necessary for the interest of my children' as a limitation upon the authority otherwise given in the will, it seems that the result must still be the same. Under a power to sell lands for the payment of debts, a mortgage, it seems, may be given to raise money for that purpose, unless it be the clear intention of the testator, in directing the sale, that his real estate should be absolutely converted."

The absolute correctness of that decision has never been called in question, but it has in several instances been cited and approved. In the case of Quisenberry v. Watkins Land Co., 92 Texas, 247, it was held that the power "to sell and dispose of the property was controlled by another clause of the will which had the effect to prescribe that the sale should be only one that dispossessed the executor of the title to the land." The case of Faulk v. Dashiell was cited, and its force and authority was not questioned.

In the case of Stevenson v. Roberts, above cited, the powers of independent executors were fully discussed by the Court of Civil Appeals of the Fifth Supreme Judicial District, and the conclusion reached that under article 1867, Revised Statutes, the powers of independent executors are governed by principles of the common law not in conflict with statutory provision, and a power to sell includes a power to mortgage.

In the will of Refugia L. Grier not only was the executor given the power to "manage and control" but to "sell, release and convey by deed or other conveyance." There must have been in the mind of the testatrix the intention to grant a power other than that to sell, or there is no signification or reason in the words which give the right to sell and convey "by deed or other conveyance." There must have been in the mind of the testatrix the intention to grant a power other than that to sell, or there is no significance or reason in the words which give the right to sell and convey "by deed or other conveyance." It was clearly her intention to give him the authority to sell and convey the property by other instruments of writing besides deeds, and the most natural construc-

32 Civil—14.

tion to be placed upon the language is that there was an intention to confer the power to convey by mortgage or deed of trust or other writing, as well as by deed. Under the authorities cited the executor could have executed a mortgage under a power to sell unless other language was used in the will that evidenced a desire to limit the power to sell to absolute alienation of title, and had the power to sell and convey been restricted to do so "by deed," it would follow that a mortgage could not be upheld, but the will goes further and authorizes the executor to sell and convey by "other conveyance" as well as by deed.

By the terms of the will the testatrix expressed "full confidence in the integrity and honesty" of the executor, who she denominates "my friend," and the evident purpose was to place the entire management, control and disposition of her property in his hands with no restriction upon him. except to faithfully use it for the benefit of her daughter. The clause in the will which provides that the "property or proceeds of the sale thereof" are to be held in trust for the daughter, must be read and construed in connection with the authority given to sell and convey the property "by deed or other conveyance" to arrive at the intention of the testatrix. "This intention must be ascertained by considering the entire instrument, and the language of a single clause of it will not govern what is the evident intention in the use of that language when read in connection with the other provisions." Cleveland v. Cleveland, 89 Texas, 445. That the testatrix intended to give to the executor entire control over her property, to be managed by him as he might deem fitting and proper, is also shown by the fact that his control of the property was to continue during the life of her daughter. During that time he was to apply the property or its proceeds to the payment of the debts of the estate and to the support and maintenance of the daughter. To his discretion and judgment was confided the details of obtaining the proceeds to be so used.

The trial court very properly set aside the sale of the collateral security and rendered judgment for Leonards for the amount of the $700 note, with interest, and no complaint is made of that part of the judgment.

We conclude that there is no error in the judgment, and it is affirmed.

*Affirmed.*

Writ of error refused.