## JACKSON et al. v. TEMPLIN.
### No. 1439—6089.

Commission of Appeals of Texas, Section B. Dec. 30, 1933.

Cunningham & Lipscomb, of Bonham, for plaintiffs in error.

J. Cleo Thompson, of Dallas, and Clark, Harrell & Clark, of Greenville, for defendant in error.

RYAN, Judge.

There is involved in this case the proper construction to be given the following clause in the will of J. E. Jackson, deceased, viz.: "I direct and bequeath that there shall be set apart to my daughter, Fannie Jackson, as trustee for the use and benefit of my daughter, Kate Jackson, a tract of 200 acres of land situated in Hunt County, being the southeast block of my 1200 acre tract and shown on plat as Block 6, and also my $1000.-00 stock in the First State Bank of Ladonia, and also a one-half interest in my home place on Main Street in Ladonia, fronting 130 feet on said Main Street and running back the entire length of block. Said trustee is to hold said property in trust for my daughter, Katie Jackson, for her maintenance during her life, and at the death of my said daughter, Katie, said trust estate is to revert to all my children then living or their heirs. Said trustee shall have full power to rent or sell any of said trust property as may seem best, save the home place which I desire to pass as provided, that is, one-half interest to Kate for her life, and then to go to my children then living or their heirs; said trustee shall pay to said Katie whatever shall appear necessary for her comfortable maintenance and support from the income of said trust estate. I desire said trustee to hold same during her natural life and to name her successor in her will who shall be a member of the family by blood or marriage, but in event said trustee shall marry or desire to relinquish said trust, then her successor shall be named by a majority of my children then living. I give and bequeath all my household effects after the bequests herein mentioned are satisfied to my daughter, Katie Jackson" —with reference to the right of the trustee to borrow money by mortgage on such property.

Kate Jackson was, as proven, deaf and dumb, and not normal mentally. By an order of the probate court, Fannie Jackson was confirmed and qualified as trustee of the estate of Kate Jackson, as provided in the will; her bond was fixed at $20,000; afterwards she married a Mr. Kavanaugh and subsequently died. Pearl Thomas, daughter of the deceased, was then selected as successor trustee in the place of Fannie Jackson, by a majority vote of the children of J. E. Jackson, the deceased, in accordance with the terms of his will, which action was confirmed by the probate court, and her bond fixed at $20,000. She duly qualified, executed the bond, and took charge of Kate Jackson's estate.

On September 12, 1927, Pearl Thomas, trustee of the estate of Kate Jackson, borrowed from Frances Templin, guardian of the estate of Clyde Dozier, n. c. m., the sum of $1,500 out of funds of the estate of said Clyde Dozier, and executed a note therefor payable three years after its date, with interest at the rate of 7 per cent. per annum, payable annually, all past-due interest to bear interest at the rate of 10 per cent. per annum, and containing the usual maturity acceleration clause on failure to meet any installment of interest or to perform the agreements contained in the deed of trust given to secure said note, and the usual 10 per cent. collection fee clause if the note be placed in the hands of an attorney for collection, or if collected by suit or through the probate court.

At the same time, Mrs. Pearl Thomas, trustee, executed a deed of trust to Tom L. McCulloch, trustee, in which the said tract of 200 acres of land in Hunt county (described in the above-described devise to Fannie Jackson in trust for the use and benefit of Kate Jackson) was conveyed for the purpose of securing payment of said note and indebtedness. Rosser Thomas, husband of Pearl Thomas, joined her in the execution of said note and said deed of trust.

Because of default in payments required on said note, the property, after due notice, was advertised for sale by a substitute trustee (McCulloch having resigned), and, at such sale, Frances Templin, guardian of the estate of Clyde Dozier, being the highest and best bidder, became the purchaser, and on November 7, 1929, received deed of conveyance from the substitute trustee; on February 28, 1930, she filed this suit, in trespass to try title, in the district court of Hunt county against Kate Jackson, J. A. Jackson, as trustee of the estate of Kate Jackson (he having succeeded Pearl Thomas as such), Pearl Thomas, and her husband, Rosser Thomas, for the title and possession of said tract of land, rents, and damages. Afterwards Mercantile Bank & Trust Company of Texas became the guardian of the estate of Clyde Dozier, n. c. m., and was substituted in the place of Frances Templin, as such, in the litigation.

The transcript discloses answer filed only by Kate Jackson and J. A. Jackson, consisting of general demurrer, general denial, plea

of not guilty, and an averment that plaintiff's claim is unfounded and constitutes a cloud upon title which should be removed.

Judgment was rendered by the trial court, divesting title to the land in controversy out of the defendants and vesting same in Clyde Dozier, suing through his guardian, Mercantile Bank & Trust Company of Texas, which judgment was affirmed by the Court of Civil Appeals. 40 S.W.(2d) 958.

It is the contention of plaintiffs in error that, under the terms of the will of J. E. Jackson, deceased, the trustee of Kate Jackson had no authority to create debts and liens against property, the income of which only was to be used for the benefit of Kate, and that the right to rent or sell did not include the right to mortgage; therefore the deed of trust given by Pearl Thomas, trustee, to secure a loan, as well as all proceedings thereunder, are void, and did not divest title out of the trustee for Kate to the property set apart for her maintenance and care.

On the other hand, defendant in error contends that, under said will, the right to mortgage was given, in that authority to "rent or sell any of said trust property as may seem best" includes the power to mortgage, and asserts the doctrine in this state to be "that an unrestricted power to sell confers the power to mortgage, especially where the power to sell is not limited or restricted."

Therefore, the question to be determined is which of the above contentions is correct, as applied to this case.

■ In construing a will, the intention of the testator must be ascertained (Laval v. Staffel, 64 Tex. 370; Gallagher v. Redmond, 64 Tex. 622; Lake v. Copeland, 82 Tex. 464, 17 S. W. 786; Philleo v. Holliday, 24 Tex. 38; Haupt v. Michaelis [Tex. Com. App.] 231 S. W. 706) from the language of the will itself (Frame v. Whitaker, 120 Tex. 53, 36 S.W. (2d) 149; McMurry v. Stanley, 69 Tex. 227, 6 S. W. 412; Darragh v. Barmore [Tex. Com. App.] 242 S. W. 714; 29 R. C. L. 204), if possible, and, if not in contravention of some established rule of law or public policy, must be given effect (Haring v. Shelton, 103 Tex. 11, 122 S. W. 13; Brooks v. Evetts, 33 Tex. 732; Bell County v. Alexander, 22 Tex. 351, 73 Am. Dec. 268; 40 Cyc. 1386).

In Cleveland v. Cleveland, 89 Tex. 445, 35 S. W. 145, 147, the court quoted with approval from Hunt v. White, 24 Tex. 652, as follows: "It is competent to admit parol evidence—as it is sometimes, though not very accurately, expressed—to explain a will or other written instrument, by showing the situation of the testator in relation to persons and things around him; or, as it is often expressed, by proof of the surrounding circumstances, in order that his will may be read in the light of the circumstances in which he was placed at the time of making it. *His intent must be ascertained from the meaning of the words in the instrument, and from those words alone.* [Italics ours.] But as he may be supposed to have used language with reference to the situation in which he was placed, to the state of his family, his property, and other circumstances relating to himself individually, and to his affairs, the law admits extrinsic evidence of those facts and circumstances, to enable the court to discover the meaning attached by the testator to the words used in the will, and to apply them to the particular facts in the case. For this purpose, every material fact that will enable the court to identify the persons or things mentioned in the instrument is admissible in order to place the court, whose province it is to determine the meaning of the words, as near as may be, in the situation of the testator when he used them in making his will. * * * In this way, extrinsic evidence may aid in arriving at the intention of the testator, by showing in what sense he employed the language used in his will; and for this purpose (that is, to enable the court to understand the meaning of the words in the instrument) parol evidence is admissible, but never for the purpose of proving other language, declaring his meaning, than that which is contained in the instrument itself."

■ Of course, the terms of the will itself must control, and, while the extraneous circumstances attending its execution may be considered, so as to place the court as nearly as possible in the situation of the testator at the time, better enabling it to give such a construction to the words as the testator himself would have done, that intention must, after all, be gathered from the words of the will. 1 Redfield on Wills, p. 621; Cleveland v. Cleveland, 89 Tex. 445, 35 S. W. 145; West v. Glisson (Tex. Civ. App.) 184 S. W. 1042.

As tersely said in Lindsey v. Rose (Tex. Civ. App.) 175 S. W. 829, 832 (writ of error refused): "The intention and meaning can best be ascertained by the court putting itself, as far as may be, in the place of the testator and reading the will in the light of his environments at the time the will was made."

The will explicitly limits payments for Kate's maintenance and support to the income of the trust estate; the property is to be held in trust for her during her life, and at her death to revert to all the testator's children then living or their heirs.

The testator's intention clearly expressed was to provide for the maintenance of an afflicted child during the latter's lifetime, but only out of the income of the trust estate. The trustee was empowered to rent or sell any of it, except the home place.

The right to sell was confided to the judgment of the trustee—the proceeds, as we gather from the intent of the will, to replace as capital that which might be sold. This is made clear by the requirement that Kate's maintenance and support should come from the income, and the further provision that the trust estate shall be held by the trustee only during Kate's lifetime, after which it shall revert to all testator's children then living or their heirs.

Unquestionably, for the purposes above stated, the trustee had the right to sell, but did she have the right to mortgage, and thus subject, not only that which is mortgaged, but other trust property (because of liability resulting from a deficiency judgment), to loss from the capital of the trust estate, and destroy the latter?

If the testator had intended giving to the trustee the right to mortgage the property with the consequent result of possibly destroying the estate, he would, it seems to us, have so stated in the will, and not have limited the powers of the trustee as he did.

Defendant in error argues that the right to sell includes, of itself, the right to mortgage; the corollary to this contention, applied to the present case, is that the entire trust estate, the income from which was by the testator thought sufficient for Kate's maintenance and support during her entire lifetime, might and could be totally destroyed as the result of a comparatively small loan secured by mortgage on either a part or all of it.

We think the testator had no such purpose in his mind, when he undertook to make the provisions he did, for his child.

As said in 26 R. C. L. 1304: "It is impossible to deduce from the decisions any general rule to the effect that a power to mortgage is to be implied from an express power to sell contained in a deed creating a trust, because it appears on examination that the cases do not apply to the expressed power of sale any settled rule of construction, but merely seek to ascertain from the particular trust instrument and the surrounding circumstances the power which it was intended the trustee should have. The weight of authority seems to be that a mere power to sell, such as that of a power of attorney to sell real estate, confers no power to mortgage."

In Faulk v. Dashiell, 62 Tex. 642, 50 Am. Rep. 542, the will provided: "I hereby direct that my executor take full charge of my entire estate and manage and control the same as he may think best for the interest of my children before named, and I hereby fully empower him, my executor, to sell, exchange and dispose of my estate as he may deem necessary for the interest of my said children, being responsible to no one. * * * It is my will and desire, and in conformity that I hereby direct, that my executor take charge of my entire estate and manage and control the same for the support, maintenance and liberal education of my children aforesaid, and when my children attain lawful age it is my will and desire, and I hereby direct, that the residue remaining in the hands of my executor, after raising and educating my children aforesaid, be equally divided among my said children." The will constituted the executor such, without bond and independent of the probate court.

The court said that the will contemplated the necessity of raising money wherewith to support, maintain, and furnish a liberal education to the children, and anticipates the possibility that in doing these things that a portion and perhaps all the property may be consumed, the management and control of the property being unrestricted and unlimited otherwise than as the executor may think best, and with the power of disposition in such a way as he in his discretion may judge to be necessary for the interest of said children, unhampered by responsibility to any one by reason of a free exercise thereof.

The court refers to certain authorities to the effect that a power of sale implies a power to mortgage, and to other authorities in which this doctrine is denied and its application subjected to considerable modification, and decided the case, not upon either line of such authorities, but upon the sound and correct proposition that the intention of the testator must control, to ascertain which all parts of the will must be looked to.

In Quisenberry v. J. B. Watkins Land-Mortgage Co., 92 Tex. 247, 47 S. W. 708, the will provided: "I give and bequeath to my son, Charles R. Beatty, * * * the aforesaid tract of land, with the right to sell, devise, or exchange said land, subject to the following conditions: If he should die without having by sale, bequeath, or exchange, or in any other lawful way, dispossessed himself of the title," a certain course for the property to take is prescribed. The will then states: "My object in these provisions is to give my son, Charles R. Beatty, the right to dispose of the land as he pleases during his life, or by will at his death, but, in the event of his failure to do this, it is my intention to give the absolute title to his lawful children or descendants, with provisions as stated in provision 1 for his widow, with no attempt to control it further," and certain courses for the property to take are prescribed in case only his widow survives the son or the property ultimately revert to his daughter, Pattie B. Quisenberry, if the son "shall die before he alienates the title, leaving neither legal heirs, issue of his body, nor making testamentary disposition of the

land." O. Beatty, the testator, died on June 22, 1890; he had two children, Pattie B. Quisenberry and Charles R. Beatty.

On October 1, 1890, Charles R. Beatty and wife executed a bond for $2,000, due in five years, secured by deed of trust upon the land described in his father's will, to J. B. Watkins, trustee. The debt was transferred to the J. B. Watkins Mortgage Company, which was afterwards placed in the hands of a receiver. The deed of trust was not foreclosed, and Charles R. Beatty died on June 21, 1892, leaving neither children nor widow, his wife having died at a date prior thereto. An administrator of his estate, which was insolvent, was appointed; his sister, Mrs. Quisenberry, was his only heir, and she brought suit against the mortgage company and others interested to annul the deed of trust, obtain construction of the will, and remove clouds from the title.

Our Supreme Court (opinion by Judge Brown), after stating that the sole question presented was, Did the will of O. Beatty authorize Charles R. Beatty to make the mortgage, it being contended that, by the use of the terms "sell" and "dispose of," the power to make the mortgage was given? said: "It is true the word 'sell,' as well as the phrase 'dispose of,' has been held to include the power to make a mortgage, but in the cases which so hold *the purposes of the instruments were such that the power to make a mortgage was implied.* Faulk v. Dashiell, 62 Tex. 642 [50 Am. Rep. 542]. No such implication can arise in contravention of the intention of the parties. Loebenthal v. Raleigh, 36 N. J. Eq. 169." The court, after holding that the right to mortgage could not be derived from the authority to "exchange or devise," and if such right be sustained it must be under the authority to "sell," concluded that "the usual effect of a sale is to pass the title to the property, and the word 'sell' must be so construed, unless a different intent appears."

■ Expressive of the doctrine above announced, that the power to "sell" does not include the power to "mortgage," unless the intent and purposes of the instrument were such that the power to mortgage is implied, is the announcement in Willis v. Smith, 66 Tex. 31, 17 S. W. 247, that the power to sell does not authorize the execution of a deed of trust lien.

In Stevenson v. Roberts, 25 Tex. Civ. App. 577, 64 S. W. 230, cited by defendant in error, the authority of an independent executor to secure by mortgage an antecedent debt owing by the testator was the question under consideration.

The court held that the terms of the will did not evidence the intention of the testator that the executrix should sell or otherwise dispose of the land then in controversy, and the power to sell at all arises from the duty imposed on the executor to provide for the payment of the decedent's debts, and is therefore not a question of intention, but one of power.

The court is careful to state that Faulk v. Dashiell, supra, was decided on the finding that the language of the will disclosed an intention on the part of the testator to grant to the executor the power to mortgage, and Quisenberry v. J. B. Watkins Land-Mortgage Co., was decided on the same principle, viz., that the intention of the testator will control; and the court is again careful to note that the question of the authority of an independent executor was not involved in those cases. The court then concluded that, so far as creditors are concerned (and we understand by this, creditors of the deceased— such at the latter's death), the independent executor stands in the shoes of the constituent and holds upon the same terms as testator, but no such authority exists in the ordinary administrator, or the executor without independent powers, or the successor of an independent executor.

■ There the court dealt with the powers of an independent executor, here we have the case of a trustee with certain delegated authority and only such as is given in the will creating the trust. Here, the trust estate was not handled by the independent executors under the will, but by another as trustee under the terms of the trust bequest, and the trustee's power must be measured thereby and not by any rule governing independent executors; we think the doctrine of Stevenson v. Roberts is not applicable to the instant case.

This principle is recognized in McNeill v. St. Aubin (Tex. Civ. App.) 209 S. W. 781, where the right of trustees to hold the estate of minors, as against the guardian of such minors, was upheld, the court pointing out the difference in authority between an independent executor in settling and winding up an estate and a trustee, holding as such, under certain powers conferred on him.

In Prieto v. Leonards, 32 Tex. Civ. App. 205, 74 S. W. 41, 42, cited by defendant in error, the will authorized the executor "to handle, manage and control" the estate, "with full power and authority to sell, release and convey by deed or other conveyance any and all property owned" by the testatrix, as to the executor "may seem right and proper." The court held that the testatrix evidenced the intention to give authority to sell and convey by other instruments of writing besides deeds, which included mortgages, deeds of trust or other writings, but that, had the power to sell and convey been restricted to do so "by deed" alone, the mort-

gage could not be upheld. Clearly this authority is not in point.

In Tomlinson v. H. P. Drought & Co. (Tex. Civ. App.) 127 S. W. 262, 263, cited by defendant in error, the will gave to the executors "full power and authority to mortgage, sell or otherwise dispose of any and all property [of which] testator may die possessed," and in Becker v. American National Bank (Tex. Civ. App.) 286 S. W. 889, 890, also cited by defendant in error, the will provided: "I hereby give and grant to my said executors, when qualified, full and absolute dominion over the property of my estate, and they are hereby authorized, according to their discretion, to manage, control and dispose of same, sell, convey or encumber same —saving and excepting that they are not authorized to sell or encumber any business property belonging to my estate situated in the city of Austin"—certainly, different language from that under consideration in the present case.

We are cited to Sampson & Keene v. Williamson, 6 Tex. 102, 55 Am. Dec. 762. The question in that case was whether, under the Constitution then in force, as follows: "The Legislature shall have power to protect by law, from forced sale, a certain portion of the property of all heads of families. The homestead of a family, not to exceed two hundred acres of land not included in a town or city, or any town or city lot or lots in value, not to exceed two thousand dollars, shall not be subject to forced sale, for debts hereafter contracted; nor shall the owner, if a married man, be at liberty to alienate the same, 'unless by consent of the wife, in such manner as the Legislature shall point out'" —the head of a family, if a single man, could mortgage his homestead to secure the payment of a debt, and, if a married man, whether, with the consent of the wife, he could execute such a mortgage.

Chief Justice Hemphill was of opinion that the words, "forced sale," mean a sale "made under the process of the Court and in the mode prescribed by law," and a foreclosure in court would be a forced sale in violation of the Constitution; the homestead is exempted from forced sale, but its voluntary alienation is not inhibited, and a sale under a power in a mortgagee or trustee would be voluntary—the assent of the wife would give as much validity to such mortgage as to an absolute immediate sale. The effect of his opinion, as we understand it, is that a mortgage depending for its enforcement on judicial process is ineffectual, because a sale under such a process would be "forced," while a mortgage not depending for its enforcement on judicial process is voluntary.

Associate Justice Lipscomb was of opinion that the mortgage in that case was not a voluntary sale or alienation of real estate because the mortgage did not pass the legal title to the mortgagee, and the law has pointed out the mode in which it shall be voluntarily alienated, and this method is not by mortgage. He affirms the proposition that a trustee acting under a special trust for the sale of land when the object was to alienate the whole title would have the power to sell, but no power to lease or mortgage.

Associate Justice Wheeler seems not to have been in accord with his brethren. He was not satisfied that sale under a decree of foreclosure of a mortgage is a "forced" sale in the sense that term is employed in the Constitution. He was also of opinion that the power of "alienation" includes that of mortgage, that a wife may execute a valid mortgage, and the power to mortgage includes an authority to sell when necessary to give effect to the mortgage.

It is obvious, we think, from the contrariety of opinion on the subject, expressed by those three great judges, that said case does not settle the question for it, as defendant in error so strenuously insists.

In Mansfield v. Wardlow, 91 S. W. 859, 863, the Court of Civil Appeals at San Antonio (writ of error denied) said (speaking of a trust estate): "It is * * * a general rule that a power to sell and convey real estate does not confer a power to execute a mortgage, and that a mortgage executed under a power to sell and convey only is void."

▮ Summarized, the great weight of authority is to the effect that the power of a trustee to mortgage the trust property depends entirely upon the terms of the instrument creating the trust, and, unless power be expressly given by the instrument or an intent to confer the power can be implied from its terms and the circumstances surrounding the trust, the trustee cannot mortgage the trust property. 1 Ann. Cas. note page 942; 49 C. J. 1271; 40 Cyc. 1386; 26 R. C. L. p. 1303, § 156, p. 1304, § 158.

Trustees are not permitted to go beyond such authority as is given expressly or by necessary implication. Bullard v. City of Cisco (U. S.) 54 S. Ct. 177, 78 L. Ed. —, decided December 4, 1933.

▮ While courts have jurisdiction to construe wills, they have none to reform or correct them. They can add nothing to nor subtract anything from a will, but must leave it as the testator made it, giving it only such construction as he intended. Thornton v. Zea, 22 Tex. Civ. App. 509, 55 S. W. 798.

The question presented in this suit does not in any manner involve the right of an executor to sell for the payment of debts, or mortgage property to secure same, but

whether, under the language of the will creating the trust and the attendant circumstances of the making of the will, an intention on the testator's part to give the trustee a right to mortgage is disclosed. It may have been more reasonable to have authorized a mortgage, if in the trustee's judgment that was necessary; "nevertheless," as said by Judge Brown in Adams v. Mauermann, 90 Tex. 438, 39 S. W. 280, 282, "the property belonged to [the grantor], and he had a right to dispose of it according to his own judgment and inclination. * * * That was a question for the grantor to determine before he made the deed, and not for the court to decide in order to control the construction of the instrument."

We have reached the conclusion that the judgments of the trial court and Court of Civil Appeals should be reversed, and judgment rendered in favor of plaintiff in error, and so recommend.

CURETON, Chief Justice.

The judgments of the district court and Court of Civil Appeals are both reversed, and judgment rendered for the plaintiffs in error, as recommended by the Commission of Appeals.