**LATTIMER et al. v. WILLIAMS et al.**
No. 2226.

Court of Civil Appeals of Texas. Eastland.
Feb. 6, 1942.

Rehearing Denied March 6, 1942.

Williamson & Nordyke, of Stephenville, for appellants.

R. L. Thompson, J. A. Johnson, and C. O. McMillan, all of Stephenville, for appellees.

LESLIE, Chief Justice.

Plaintiffs, Pearl O. Williams and others, instituted this suit against R. T. Fulfer and others to obtain a construction of the last will and testament of their mother, Mrs. Cornelia M. Fulfer. The suit was dismissed as to Burt Fulfer. C. N. Fulfer disclaimed, as did Mrs. Kate Patterson et vir. Mrs. Nannie Lattimer had sold any interest she had in the estate involved to R. T. Fulfer. So had Curtis Fulfer.

R. T. Fulfer answered by general demurrer, general denial and presented a cross-action asserting a certain interest in the property involved and asked that the same be partitioned and his part, alleged to be 16/18ths, set aside to him. The trial was before the court and judgment was rendered declaring a certain construction of the will presently to be considered. R. T. Fulfer was denied any recovery on his cross-action. The construction given the will is substantially in line with plaintiffs', or appellees', contention. Mrs. Nannie Lattimer, as independent executrix of her mother's estate, and R. T. Fulfer appeal.

The litigants are the nine children of Newt and Cornelia M. Fulfer. Gwendolyn Williams, a defendant, is a granddaughter. Newt and Cornelia M. Fulfer acquired during their marriage the 422 acres' of land involved in this litigation. The father died in 1922, leaving a will bequeathing to Mrs. Cornelia M. Fulfer a life estate in his one half community interest in the 422 acres of land. The father's will was duly probated but is not in the statement of facts, and the litiga-

tion proceeds upon the theory that each acquired at the mother's death a 1/9th interest in the father's share.

Cornelia M. Fulfer died February 13, 1940, at which time she owned her community interest in said land and had been using all of it as a home. Her will was duly probated April 12, 1940.

The Conway debt, hereinafter referred to, was the result of a loan made by J. W. Conway to Mrs. Cornelia M. Fulfer on October 23, 1934, at which time she executed to Conway her five $100 notes and a sixth note for $1,500 due, respectively and annually, October 23, 1935 down to and including October 23, 1940. The indebtedness was secured by a deed of trust lien against her half of the community interest in the 422 acres of land.

▆ Omitting formal parts, Cornelia M. Fulfer's will by Item 1 devised to six of her children $1 each. By Item 2 she devised to 8 of her children, and her granddaughter Gwendolyn Williams, "all the mineral rights I own in the Bowers place * * * in the following proportions:

"To Gwendolyn Williams a 3/9ths undivided interest in said minerals, to Mrs. Nannie Lattimer a 1/9th undivided interest, to Mrs. Carrie Foster a 1/9th undivided interest, to Mrs. Kate Patterson a 1/9th undivided interest, to C. N. Fulfer a 1/9th undivided interest, to Bert Fulfer a 1/9th undivided interest, to Mrs. Dale Garrison a 1/9th undivided interest."

Items 3 and 4 and the codicil of the will are directly involved by the issue of construction and will be set out in full.

"Item 3

"After payment and delivery of the above bequests, I hereby give, bequeath and devise to my children R. T. Fulfer, Mrs. Pearl O. Williams, Mrs. Dale Garrison and my granddaughter, Gwendolyn Williams, all the remainder and residue of my property of every kind and character and wheresoever situated in the following proportions, to-wit:

"To R. T. Fulfer an undivided 5/9ths interest;

"To Mrs. Pearl O. Williams an undivided 2/9ths interest;

"To Mrs. Dale Garrison an undivided 1/9th interest;

"To Gwendolyn Williams an undivided 1/9th interest.

"Item 4

"R. T. Fulfer, Mrs. Pearl O. Williams, Mrs. Dale Garrison and Gwendolyn Williams shall out of the property bequeathed to them herein in Item 3, pay my just debts, expenses of my last illness and burial expenses in the same proportions as they receive said property. Said R. T. Fulfer, Pearl O. Williams, Mrs. Dale Garrison and Gwendolyn Williams, shall in the same proportions pay all indebtedness secured by a lien on my home place and now held by J. W. Conway as it comes due after the date of this will and if any of said devisees shall fail or refuse to pay his or her prorata part of said indebtedness as it becomes due, shall receive nothing under Item 3 hereof and the devisees named in Item 3 who do pay said indebtedness shall take the property described in Item 3 in the proportions they pay said indebtedness.

\* \* \* \* \* \*

"Codicil

"Whereas, I, Mrs. Cornelia M. Fulfer of the County of Erath, State of Texas, have heretofore made my last will and testament executed the first [31st] day of March, 1938, said will bearing said date and witnessed by W. G. Fulbright and Mrs. W. G. Fulbright. Now, I do by this writing hereby declare this to be a codicil to my said will, to be taken as a part thereof and whereas in Item 4 of said will wherein I bequeathed certain shares of my estate with the condition that each share shall bear a prorata of indebtedness and stipulated that if each shareholder or devisee failed or refused to pay his or her prorata part of existing indebtedness as it became due, then such devisee should receive nothing under Item 3 of said will I now direct that if any of the other devisees shall pay the prorata indebtedness of any other devisee then that share shall acrue and become the property of the devisee so paying such indebtedness; and I further revoke the appointment of Oscar Williams as executor of this my last will and testament and hereby appoint Mrs. Nannie Lattimer executrix of this my last will and testament and direct that no bond or other security be required of her and that no proceedings be had in any court with reference to my estate to probate this will except to file an inventory and appraisement * * *."

The pleadings raised questions of alleged ambiguity as involved in the will and that

portion of the judgment construing the will is as follows:

"That the original will of Mrs. Cornelia M. Fulfer, deceased, contains the following provisions: 'Said R. T. Fulfer, Pearl O. Williams, Mrs. Dale Garrison and Gwendolyn Williams shall in the same proportions pay all indebtedness secured by lien on my home place and now held by J. W. Conway as it becomes due after the date of this will and if any said devisee shall fail or refuse to pay his or her prorata part of said indebtedness as it becomes due, he shall receive nothing under Item 3 hereof and the devisees named in Item 3 who do pay said indebtedness shall take the property described in Item 3 in the proportions they pay said indebtedness', and the codicil attached to said will provides: 'Whereas, in Item 4 of said will wherein I bequeathed certain shares of my estate with the condition that each share shall bear a prorata of indebtedness and stipulated that if each shareholder or devisee failed or refused to pay his or her prorata part of the existing indebtedness as it became due, then such devisee should receive nothing under Item 3 of said will and I now direct that if any other devisee shall pay the prorata indebtedness of any other devisee then that share shall accrue and become the property of the devisee so paying such indebtedness' that in said codicil the testatrix left out the provision that if any devisee failed or refused to pay his or her part of the indebtedness to J. W. Conway as it becomes due then such devisee should receive nothing under Item 3 of the testatrix's will; that the intention of the testatrix in leaving out this provision for forfeiture was that in the event none of the devisees fully complied with the condition requiring the payment of the debt named in the will then that each person should take the share bequeathed to them in such will; that by the use of the term 'shall accrue and become the property of the devisee so paying such indebtedness' it is shown that the evident intention of the testatrix was that the payments to be made on the Conway debt included any payment which might become due after the death of testatrix."

The court then finds that none of the parties named as beneficiaries in Item 3 of the will fully complied with the provisions of such will requiring the payment of all indebtedness due on the Conway debt.

The trial court then construed the above provisions of the will as follows:

"It is therefore ordered, adjudged and decreed by the court that the will of Cornelia M. Fulfer, deceased, be and it is hereby construed to pass title to the property of Cornelia M. Fulfer remaining on hand after the payments and delivery of the bequests mentioned in Items 1 and 2 of said will shall and did pass to R. T. Fulfer an undivided 5/9ths interest, Mrs. Pearl O. Williams an undivided 2/9ths interest, Mrs. Dale Garrison an undivided 1/9th interest and Gwendolyn Williams an undivided 1/9th interest.

"It further appearing to the court that R. T. Fulfer is not entitled to recover on his cross-action herein against plaintiffs. It is therefore ordered that R. T. Fulfer take nothing on his cross-action against plaintiffs and that plaintiffs recover their costs, for which execution may issue."

We are unable to agree to the construction of the will reflected in the above provisions of the judgment. In the first place, we do not gather from the will, and especially from the codicil, any intention on the part of the testatrix to leave out what the court designates as the "provision for forfeiture" embraced in Item 4. If anything, such provision is emphasized by the terms of the codicil and may be said to be clarified by the codicil.

The Conway indebtedness was an encumbrance against Mrs. Fulfer's undivided community interest in the 422 acres of land. As encumbered, she desired to protect the same against foreclosure and by the terms of the will and codicil she was endeavoring to make sure that said indebtedness was paid off "as it became due after the date of the will." This is obvious from Item 4, the codicil and the terms of the will generally.

Item 4 stipulated that these four devisees in Item 3 were to pay off such indebtedness "in the same proportions" as they received the residue of her property (in Item 3) and in Item 4 she states "if any of said devisees fail or refuse to pay his or her prorata part of said indebtedness as it becomes due, [he] shall receive nothing under Item 3 hereof and the devisees named in Item 3 who do pay said indebtedness shall take the property described in Item 3 in the proportions they pay said indebtedness."

From this language of the will it is thus seen that the implication or inference

might easily arise that if a devisee defaulted in paying his particular part of said indebtedness as it becomes due, the obligation would rest upon the remaining devisees to protect themselves by some character of joint action. This view or interpretation might arise from the language pluralizing "devisees" and "proportions" in the provision namely, "and the devisees named in Item 3 who do pay said indebtedness shall take the property described in Item 3 in the proportions they pay said indebtedness." By the execution of the codicil it is reasonably apparent that Mrs. Fulfer intended to make it possible, as well as convenient, for any devisee not only to protect his original interest as designated in Item 3, but also to acquire the share of any defaulting devisee and to be able to do so without the necessary cooperation of or contribution by any other or all the other devisees named in Item 3. This is reflected by the provision in the codicil which says "I now direct that if any of the other devisees shall pay the prorata share of any other devisee then that share shall accrue and become the property of the devisee so paying such indebtedness."

Stated somewhat differently, the testatrix possibly considering that the original will might imply or be construed to require joint action (by those not defaulting) to pay off the indebtedness of a defaulting devisee, she proclaimed the codicil thereby enabling any of the devisees to pay the default and take the share. In this manner the devisee who desired to protect himself or his interest acquired under Item 3 could do so individually. This simple right of action would enable any devisee (ready and able to protect his bequest) to take up the default of another without concerted action of others and thus prevent any defaulting devisee's precipitating foreclosure of the Conway debt simply because it might be considered such joint action was necessary and same could not be obtained. Such consideration doubtless prompted the execution of the codicil.

It follows that we are of the opinion that the testatrix in the codicil to her will recited, in substance, the forfeiture contingency of Item 4 of her will, and thereby re-enacted and re-affirmed her intention to retain such forfeiture contingency and impose it upon her devisees, and she then attempted to clarify what would become of the share of the defaulting devisee as well as to whom it should go. By the codicil she more

specifically guarded against the possibility of foreclosure on her home by reason of any default in payment of the Conway debt as it became due "after the date of the will."

In other words, we construe the will, and especially Items 3 and 4 and the codicil, to mean that the ownership or proportion of ownership of the property devised by paragraph 3 of the will is determined by who paid, and in what proportion they paid, the Conway debt after the execution of the will and before the testatrix' death. Such ownership would depend upon the conditions that existed prior to testatrix' death. If prior to said death all the parties mentioned in paragraphs 3 and 4 of the will, except R. T. Fulfer, failed or refused to pay any installment of the Conway debt when it became due, the parties so failing forever lost their interest in the property devised to them under paragraph 3.

Further, the literal language of the will makes no distinction between the parts of the Conway debt becoming due prior to the death of the testatrix and the parts, if any, becoming due thereafter. In the light of another provision of the will, the intention of the testatrix in this respect must be arrived at by construction. Obviously the obligation to pay debts of the estate which the law charges upon all the property was by the testatrix imposed upon the particular named residuary devisees (Item 4). The intention is expressed that the debts be paid by those obligated by the terms of the will to pay them not only in specified portions, but out of the property when received as devisees. Such portion was determinable only by the action of any particular devisee with reference to the Conway debt. That is, if any failed to pay his proportion of such debt when due, he would receive nothing as a residuary devisee. If anyone paid his proportion "as it became due after the date of the will", and upon failure of another or others to pay, the one (so paying) paid the whole debt then due, it was thereby determined, we think, that "at the death of the testatrix" such one (so paying) became the sole residuary devisee under the will.

As before stated, the testatrix evidently contemplated that the payments due prior to her death would have to be made in order to save the land to the estate, as well as for her home thereafter. Hence, she deemed it just that those who saved the land for such purposes should have it and

that those who failed or refused to do so should have nothing.

Under this view, the part of the Conway debt falling due after the death of the testatrix and how and when paid, or whether ever paid, would have no effect in determining who should finally take as residuary devisees; subject, of course, to the obligation to pay his specified proportion of all the debts without any distinction between the unpaid part of the Conway debt and the other debts. Unless the will be so construed, then it would be possible for it to so operate that it could not be determined for years even after the death of testatrix, who were finally and in fact her residuary devisees; in what proportions those who were entitled thereto took the estate or what was the proportion of the whole debt they were required to pay. Some of the debts expressly mentioned were of such nature that the reasonable payment thereof could not be deferred for years. The law requires the construction, we think, making the distinction between the part of the Conway debt due before the testatrix' death and the amount, if any, due afterwards, in order to give effect to the clearly expressed purpose that the debts due at the testatrix' death should be paid out of the interest at that time vested in the residuary devisees.

■ The testator's intention, as stated, is arrived at from the meaning of the words used in the will and codicil, and such interpretation is strengthened or confirmed by the admissible evidence or circumstances surrounding the testator when she made the will. We think the conclusions expressed have the merit of achieving the object sought in the interpretation of wills: (1) the ascertainment of the testator's intention if it can be legally and reasonably done, and (2) the enforcement of that intention.

■ In what has been said we understand that the terms of the will control and that the testator's intention must be gathered from the words of the will, although extraneous circumstances attending its execution may be considered to enable the court to construe words as testator would have done. Griffin v. Hale, Tex.Civ.App., 87 S.W.2d 497; Jackson v. Templin, Tex. Com.App., 66 S.W.2d 666, 92 A.L.R. 873; 44 Tex.Jur. p. 680, sec. 134 et seq.

If we are correct in this construction of the will the judgment is necessarily in-correct, since it was rendered on a different theory or interpretation of that instrument. For anyone to acquire the portion of Cornelia M. Fulfer's estate designated in Item 3 of the will it would be necessary for such devisee to comply with the obligations of the same. The record before us does not clearly reflect alleged performances or defaults thereunder, if any, or the date of same, and we are of the opinion that the cause should be remanded for development in the light of the construction or interpretation herein given the will as a whole.

■ We are further of the opinion that the judgment is erroneous in denying R. T. Fulfer any relief under his cross-action. Aside from the interest, if any, he may have acquired in his mother's half of the community interest or other property, it is quite apparent from the testimony that said R. T. Fulfer has acquired by purchase from seven brothers and sisters their 7/9ths interest in the father's community share of the 422 acres of land. In his own right he acquired a 1/9th interest therein, making for him 8/9ths of the father's share. It does not appear that Mrs. Pearl O. Williams has ever disposed of her 1/9th interest derived from her father's share. In the light of his pleading it would appear that the court disregarded R. T. Fulfer's rights thus acquired, or, rather denied the same to him under the cross-action.

In his cross-action R. T. Fulfer appears to have made no greater claim than that he was a joint owner of said 422 acres of land along with Mrs. Pearl Williams and Mrs. Dale Garrison. In the first sentence of his cross-action he pleads "That he and Mrs. Pearl Williams and Mrs. Dale Garrison are the joint and sole owners in fee simple of the following described land which comprised the community property of Newt Fulfer and his deceased wife, Cornelia M. Fulfer, father and mother" of said nine children. Then follows in the same paragraph this allegation:

"The defendants, Mrs. Pearl O. Williams and Mrs. Dale Garrison, each own an undivided 1/18th interest in the above described land and R. T. Fulfer owning the other undivided 16/18ths interest in said above described land."

In paragraph 2 of the cross-action he alleged "Defendant R. T. Fulfer prays that said above described real estate be partitioned among the joint owners alleged

above as provided by law and that R. T. Fulfer be decreed his share of such estate * * *."

In his pleadings he further alleges that Mrs. Pearl O. Williams, Gwendolyn Williams and Mrs. Dale Garrison "had all failed and refused to pay their prorata part of the indebtedness owing against said estate * * * by Mrs. Cornelia M. Fulfer * * * and had thereby forfeited and lost all their interest" to him. Alternative theories were not alleged. As stated above, the agreed statement of facts shows that Mrs. Garrison had transferred to him any interest she is supposed to have acquired from her father's half interest in the said land.

From the above it is obvious that the judgment on the cross-action is erroneous in substantial respects and in view of the nature or confusion reflected by the pleadings in the light of what seems to be the facts bearing upon the particular issues we are of the opinion, as stated above, that the judgment of the trial court should be reversed and the cause remanded for a new trial. It is so ordered.